### COMMONWEALTH of Pennsylvania, Appellee

v.

**Brian Keith SPENNY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 8, 2015.

Filed Nov. 17, 2015.

Laurie A. Mikielski, Public Defender and Tina M. Fryling, Public Defender, Erie, for appellant.

Dennis R. Marion, PA Dept. of Human Services, Harrisburg, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and STRASSBURGER *, JJ.

OPINION BY DONOHUE, J.:

Brian Keith Spenny ("Spenny") appeals from the October 15, 2014 judgment of sentence entered by the Erie County Court of Common Pleas. On appeal,

* Retired Senior Judge assigned to the Superior Court.

Spenny raises two challenges related to discretionary aspects of his sentence. After careful review, we conclude that the trial court erroneously included certain prior, out-of-state convictions when calculating his prior record score and determining that he was a repeat felony offender for sentencing purposes. We therefore vacate Spenny's judgment of sentence and remand for a new sentencing hearing.

On September 8, 2014, Spenny pled guilty to two counts of conspiracy to commit robbery of a financial institution.[1] Erie County Adult Probation Department ("Probation") prepared a presentence investigation report ("PSI") for the trial court, which revealed that Spenny had numerous prior theft-related convictions from Arizona and New York and federal convictions for acts he committed in Florida, Iowa and Illinois. Specifically, the PSI (as amended)[2] included the following information relevant to this appeal:

### III. PRIOR RECORD INFORMATION

| | | | |
|---|---|---|---|
| 03/08/86 | PHOENIX, AZ | *CT–1*: ARMED ROBBERY (FINANCIAL INSTITUTION) (F1) (SCORED AS AN F2) | *CR 156333–86* 05/27/86: SENTENCED TO: *CT–1*: 5½ YEARS STATE CONFINEMENT |
| 03/09/86 | PHOENIX, AZ | *CT–2*: ROBBERY (FINANCIAL INSTITUTION) (F1) (SCORED AS AN F2) | *CT–2*: 5½ YEARS STATE CONFINEMENT CONCURRENT TO *CT–1*. 10/06/88: PAROLED. |
| 04/01/98 THROUGH 09/01/99 | VARIOUS LOCATIONS IN FLORIDA, IOWA, AND ILLINOIS | *CT–1*: BANK ROBBERY (F) (SCORED AS AN F2) | *DN 8:00CR–125–T–23MSS*: |
| | | CT–1: BANK ROBBERY (F) (SCORED AS AN F2) | *DN 8:01CR–246–T–23MSS*: |
| | | CT–2: BANK ROBBERY (F) (SCORED AS AN F2) | *DN 8:01–CR–296–T–23MSS*: |
| | | CT–3: BANK ROBBERY (F) (SCORED AS AN F2) | 08/20/03: SENTENCED BY JUDGE MERRYDAY (AMENDED): *CT–1—CT–8*: |
| | | CT–4: BANK ROBBERY (F)(SCORED AS AN F2) | 70 MONTHS FEDERAL INCARCERATION, CONSECUTIVE TO **DN99–092, DN99–093, DN 2000–0051, DN 99–10–185,** FOLLOWED BY 36 MONTHS SUPERVISED RELEASE, $40,562.15 RESTITUTION, AND DRUG |

1. 18 Pa.C.S.A. §§ 903(a), 3701(a)(1)(vi). As the issues raised on appeal solely pertain to sentencing, a recitation of the facts underlying Spenny's convictions is unnecessary.

2. As discussed infra, in response to Spenny's post-sentence motion and additional information received regarding Spenny's prior convictions, Probation amended Spenny's PSI.

| Date | Location | Charge | Disposition |
|---|---|---|---|
| | | | AND ALCOHOL TREATMENT |
| | | CT–5: BANK ROBBERY (F) (SCORED AS AN F2) | |
| | | CT–6: BANK ROBBERY (F) (SCORED AS AN F2) | |
| | | CT–7: BANK ROBBERY (F) (SCORED AS AN F2) | |
| | | CT–8: BANK ROBBERY (F) (SCORED AS AN F2) | |
| | | *CT–1* AND *CT–2*: BANK ROBBERY (F) (SCORED AS AN F2) | *CT–1* AND *CT–2*: 70 MONTHS FEDERAL INCARCERATION FOLLOWED BY 36 MONTHS SUPERVISED RELEASE, CONCURRENT TO **DN8:00CR–125–T–23MSS**, $17,157.00 RESTITUTION. |
| | | *CT–2*: BANK ROBBERY (F) (SCORED AS AN F2) | |
| | | *CT–1*: BANK ROBBERY (F) (SCORED AS AN F2) | *CT–1*: 70 MONTHS FEDERAL INCARCERATION FOLLOWED BY 36 MONTHS SUPERVISED RELEASE, CONCURRENT TO **DN8:00CR–125–T–23MSS, DN8:01CR–246–T–23MSS**, $4,080.00 RESTITUTION. |
| 07/09/99 THROUGH 08/04/99 | MONROE CO, NY | *CT–1*: ROBBERY—3RD DEGREE (SCORED A[S] AN F2) | *DN 2000–0051*: 05/08/00: SENTENCED TO *CT–1*: 1–3 YEARS STATE CONFINEMENT, RESTITUTION AND COSTS, CONSECUTIVE TO **DN 99–092**. |
| | | *CT–2*: ROBBERY—3RD DEGREE (SCORED A[S] AN F2) | *CT–2*: 1–3 YEARS STATE CONFINEMENT, CONCURRENT TO *CT–1*, RESTITUTION AND COSTS. |
| | | *CT–3*: ROBBERY—3RD DEGREE (SCORED A[S] AN F2) | *CT–3*: 1–3 YEARS STATE CONFINEMENT, RESTITUTION AND COSTS, CONCURRENT TO *CT–1*. |
| | | *CT–4*: GRAND LARCENY—3RD DEGREE (SCORED AS AN F2) | *CT–4*: 1–3 YEARS STATE CONFINEMENT, RESTITUTION AND COSTS, |

| Date | County | Charge | Sentence |
|---|---|---|---|
| | | | CONCURRENT TO CT-1. |
| | | CT-5: GRAND LARCENY—3RD DEGREE (SCORED AS AN F2) | CT-5: 1-3 YEARS STATE CONFINEMENT, RESTITUTION AND COSTS, CONCURRENT TO CT-1. |
| | | CT-6: GRAND LARCENY—3RD DEGREE (SCORED AS AN F2) | CT-6: 1-3 YEARS STATE CONFINEMENT, RESTITUTION AND COSTS, CONCURRENT TO CT-1. |
| 09/27/99 | SENECA COUNTY, NY | CT-1: ROBBERY—3RD DEGREE (SCORED AS AN F2) | DN99–092: 02/22/00: SENTENCED BY JUDGE BENDER TO: 2-6 YEARS STATE CONFINEMENT. |
| 09/27/99 | SENECA COUNTY, NY | CT-1: ESCAPE AFTER FELONY ARREST (F) (SCORED AS AN F3) | DN99–093: 02/22/00: SENTENCED BY JUDGE BENDER TO: 2-6 YEARS STATE CONFINEMENT CONSECUTIVE TO DN99–092. |
| 08/25/99 THROUGH 09/27/99 | ONTARIO COUNTY, NY | CT-1: ROBBERY—3RD DEGREE (SCORED AS AN F2) | DN99–10–185: 02/23/00: SENTENCED BY JUDGE HENRY TO: CT-1: 2-6 YEARS CONFINEMENT. |
| | | CT-2: GRAND LARCENY—3RD DEGREE (SCORED AS AN F3) | CT-2: 1-3 YEARS CONFINEMENT CONCURRENT TO CT-1. |
| | | CT-3: ROBBERY—3RD DEGREE (SCORED AS AN F2) | CT-3: 2-6 YEARS CONFINEMENT CONSECUTIVE TO CT-1 AND CT-2. |
| | | CT-4: GRAND LARCENY—3RD DEGREE (SCORED AS AN F3) | CT-4: 1-3 YEARS CONFINEMENT CONSECUTIVE TO CT-1 AND CT-2. |
| | | CT-5: ATTEMPTED ROBBERY—3RD DEGREE (SCORED AS AN F2) | CT-5: 1-3 YEARS CONFINEMENT CONCURRENT TO ENTIRE SENTENCE. SENTENCE IS CONCURRENT TO DN 99–092 AND DN 99–093. |

Supplemental PSI at 3–5.

Based upon Spenny's prior convictions, the trial court found that Spenny fell under the repeat felony one and felony two offender ("RFEL") category, and sentenced him on October 15, 2014 to two consecutive terms of forty-five to ninety months of incarceration, which were to run consecutive to sentences Spenny was facing for parole violations in New York. Counsel, on behalf of Spenny, filed a timely motion to reconsider his sentence on

October 20, 2014. Therein, Spenny alleged that the PSI used by the trial court was incorrect, as "many of the out of state offenses were graded higher than [they should have been]" and some of his prior sentences included in the PSI ran concurrently. Motion to Reconsider Sentencing, 10/20/14, ¶¶ 4–5. Spenny also asserted that the trial court failed to adequately consider his cooperation with the Commonwealth in unrelated criminal matters. He thus requested that the trial court resentence him to two concurrent terms of imprisonment.

On October 23, 2014, Probation issued a memo to the trial court indicating that Spenny's Ontario County grand larceny convictions originally scored as second-degree felonies ("F2s") for Pennsylvania equivalency purposes should have been scored as third-degree felonies ("F3s"). *See* Probation Memo, 10/23/14. It further stated that after reviewing additional documentation regarding Spenny's federal and New York robberies, it confirmed that these were robberies of financial institutions, and as such, each of these robberies were properly graded as F2s for Spenny's prior record score. *Id.* Appended thereto were certified copies of Spenny's Ontario County and Seneca County convictions, as well as the pre-plea investigation reports associated with those convictions, which indicated that Spenny's burglary and grand larceny convictions stemmed from multiple bank robberies he perpetrated in those two New York counties. The Seneca County report also included historical information regarding Spenny's Arizona convictions, revealing that he committed armed robberies of a Mobil Gas Station store, a Yogurt Express and an individual, and pled guilty to two counts of armed robbery. Probation also appended to its memo an order granting a petition filed by the United States Probation Department to modify the terms of Spenny's release from federal incarceration, which outlined Spenny's federal sentence, as well as the indictment, trial waiver and sentencing papers from Arizona.

On October 29, 2014, believing that counsel had abandoned him, Spenny filed a pro se notice of appeal, which the trial court's prothonotary docketed and sent to counsel pursuant to Pa.R.Crim.P. 576(A)(4). The trial court denied Spenny's post-sentence motion on November 4, 2014, concluding that although there were modifications made in the supplemental PSI, Spenny was not entitled to be resentenced as "the original guideline computation for the mitigated, standard and aggravated ranges remains unchanged." Trial Court Order, 11/4/14, at 1 n. 1.

Counsel for Spenny subsequently filed a timely notice of appeal and complied with the trial court's order for the filing of a 1925(b) statement. The trial court issued a responsive 1925(a) opinion on January 2, 2015. Counsel for Spenny initially filed in this Court an *Anders*[3] brief and a motion to withdraw as counsel, raising two issues that counsel found to be frivolous: (1) the imposition of consecutive sentences resulted in an unreasonable sentence and (2) the trial court improperly calculated Spenny's prior record score. In a memorandum decision issued on July 8, 2015, we agreed with counsel that the first issue raised was frivolous. We concluded, however, that the second issue was not frivolous. We therefore remanded the case and ordered counsel to file a supplemental 1925(b) statement, the trial court to issue a responsive opinion, and established a revised

---

**3.** *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009).

briefing schedule for both Spenny and the Commonwealth. We instructed counsel for Spenny to file an advocate's brief addressing the question of whether the trial court properly graded Spenny's prior convictions when determining his prior record score, and in particular, the trial court's classification of Spenny as a RFEL.

The case is now once again before us for review, with Spenny raising the following issues for our consideration:

> [1.] Did the lower court commit reversible error in that its sentence was manifestly extreme and clearly unreasonable, particularly in its consecutiveness, and not individualized as required by law?

> [2.] Did the lower court abuse its discretion when it considered information that was on the presentence report that [Spenny] asserts was incorrect in that (1) many of the prior offenses had been run concurrently to each other and (2) the out[-]of[-]state offenses listed on the presentence report were graded higher than they should have been?

Spenny's Brief at 1–2.

The first issue Spenny raises on appeal, and the argument in support thereof, is identical to the issue counsel included in the originally filed *Anders* brief. *Compare* Spenny's Brief at 4–6 *with Anders* Brief at 4–6. As stated above, in our first memorandum decision in this case we agreed with counsel that this issue was frivolous. *Commonwealth v. Spenny*, 1974 WDA 2014, 8, 2015 WL 7018587 (Pa.Super. July 8, 2015) (unpublished memorandum). As we have already decided that this issue does not merit relief, we do not review it again here.

Spenny's second issue on appeal assails the trial court's calculation of his prior record score and its classification of Spenny as a RFEL. Spenny's Brief at 6–11. This presents a challenge to the discretionary aspects of his sentence. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 253 (Pa.Super.2004). As Spenny recognizes, such challenges are not subject to our review as a matter of right. "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a statement pursuant to Pa.R.A.P. 2119(f) ("Rule 2119(f) statement") in his brief on appeal, and (4) raising a substantial question for our review. *Commonwealth v. Tejada*, 107 A.3d 788, 797 (Pa.Super.2015) (citation omitted).

Spenny preserved the issues he now seeks to raise on appeal in his post-sentence motion, timely filed his notice of appeal, and included a Rule 2119(f) statement in his brief on appeal. However, just as in counsel's *Anders* brief, counsel for Spenny again failed to include this argument in the Rule 2119(f) statement. As in the *Anders* brief, the Rule 2119(f) statement states only that the trial court "did not individualize the sentence for Mr. Spenny." *Compare Anders* Brief at 4 *with* Spenny's Brief at 4. Fortunately for Spenny, the Commonwealth does not raise an objection to Spenny's failure in this regard. *See Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa.Super.1998) (en banc) ("If an appellant fails to comply with R.A.P. 2119(f) and appellee fails to object, this Court may review appellant's claims with regard to the discretionary aspects of sentence."). As this raises a substantial question for our review, *see Commonwealth v. Johnson*, 758 A.2d 1214, 1216 (Pa.Super.2000), we turn to address the merits of the issue raised, which we review for an abuse of discretion. *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa.Super.2015).

When sentencing a criminal defendant convicted of a felony and/or misdemeanor, the trial court must consider, inter alia, the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing ("Sentencing Commission"). 42 Pa.C.S.A. § 9721(b); 204 Pa.Code 303.1(a). To determine the guideline sentence for each conviction, the trial court must establish the offense gravity score and, of relevance to this appeal, the defendant's prior record score. 204 Pa.Code § 303.2(a). The prior record score is based on the number and type of prior convictions the defendant has on his or her criminal record. 204 Pa.Code § 303.4(a). Each prior conviction is given a point value ranging between one and four points. *See generally* 204 Pa. Code §§ 303.7, 303.15. Sections 303.7 and 303.15 set forth the point value for every Pennsylvania criminal offense, but generally speaking (with some exceptions not relevant here), first-degree felony ("F1") convictions are either three- or four-point offenses, F2 convictions are two-point offenses and F3 convictions are one-point offenses. *See id.*

A higher prior record score yields a higher guideline sentence, up to a maximum of five points. 204 Pa.Code §§ 303.4(a)(3), 303.16(a). A defendant who has prior convictions of F1s and F2s that total six or more points is separately classified as a RFEL, which further increases the guideline sentence. 204 Pa.Code §§ 303.4(a)(2), 303.16(a); *see also Commonwealth v. Johnson*, 125 A.3d 822, 825 (Pa.Super.2015).

If a defendant was sentenced for a single conviction at a prior judicial proceeding, that conviction is counted in the calculation of a defendant's prior record score. 204 Pa.Code § 303.5(a). If a defendant was sentenced for multiple convictions at a single sentencing proceeding, the most serious offense is included in the prior record score calculation, as is any other offense for which the defendant received consecutive sentences. 204 Pa. Code § 303.5(b). Prior convictions for which the trial court ordered the sentences to run concurrently with the most serious offense at a single judicial sentencing proceeding are not included in the calculation of the prior record score. *Commonwealth v. Janda*, 14 A.3d 147, 165 (Pa.Super.2011).

A prior conviction from another state court, federal court, or foreign jurisdiction "is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa. Code § 303.8(f)(1). If there is no current Pennsylvania equivalent, the trial court must base the grading of the crime on the maximum sentence allowed; if the grade of the prior felony conviction is unknown, it must be treated as an F3. 204 Pa.Code § 303.8(d)(2), (f)(3).

In its original 1925(a) opinion, the trial court relied upon its reasoning provided in its order denying Spenny's post-sentence motion on this issue, wherein it stated:

Upon review of [Spenny]'s motion, this [c]ourt undertook further review with [Probation] concerning the guideline computations in this case.... After that review, it was discovered that some corrections/modifications had to be made, but they do not work to [Spenny]'s benefit. I will now explain.

[Spenny] has six prior robbery convictions, five that occurred in the state of New York involving financial institutions which have been properly classified as felonies of the second degree for our purposes. In addition, he has a 1986 Arizona conviction for armed[ ]robbery of a service station which should have been scored as a felony of the first degree, but was scored as a felony of the second degree. Accordingly, he received a benefit to which he was not entitled at the time that the original

[PSI] was prepared. Continuing, [Spenny] has a prior 2000 New York conviction for grand larceny that was originally scored as a felony of the second degree, but should have been scored as a felony of the third degree. The upshot of this is that [Spenny] has six prior convictions which are properly scored as felonies of the second degree. This places him in the RFEL category [ ]. Therefore, the original computation for the mitigated, standard and aggravated ranges remains unchanged. It follows, then, that [Spenny] is not entitled to relief.

The supplemental [PSI] deviates from the original [PSI] only in these respects: (1) the numerical calculation (but not the result) of the prior record score; and (2) the reference concerning the grand larceny conviction found at the bottom of page [five] of the [PSI]. Although the grand larceny sentence was imposed concurrently to another sentence, it was done so at a separate sentencing proceeding. Therefore, it was properly counted separately.

Trial Court Order, 11/4/14, at 1–2 nn. 1–2 (footnote numbers omitted). In its supplemental opinion, the trial court states that "[o]nly six [F2s] and two [F3s] were calculated to obtain a prior record score of [twelve], *twice* the number necessary to qualify as a [RFEL]." Trial Court Opinion, 7/22/15, at 1 (emphasis in the original).

It is unclear from either of the trial court's opinions precisely which out-of-state convictions it considered when calculating Spenny's prior record score. Regardless of what convictions it considered, the trial court's supplemental explanation that it considered "six [F2s] and two [F3s]" in categorizing Spenny as a RFEL is clearly erroneous, as only F1s and F2s

count towards a RFEL designation. *See* 204 Pa.Code § 303.4(a)(2).

We further find error in the reasoning provided by the trial court its original opinion. Our review of the record reveals that "at the bottom of page [five] of the [PSI]," Spenny has two convictions for grand larceny in the third degree[4] in Ontario County, New York. Contrary to the trial court's conclusion, nothing in either the original or the supplemental PSI suggests that he was sentenced at a separate sentencing proceeding for these convictions. *See* PSI at 5; Supplemental PSI at 5. Rather, both versions of the PSI state that the Ontario County trial court sentenced Spenny to five counts, including the two grand larceny convictions, at a single sentencing hearing held on February 23, 2000. *Id.* Furthermore, the supplemental PSI graded both grand larceny convictions as F3s and thus, neither offense counted towards his designation as a RFEL. *See id.;* 204 Pa.Code § 303.4(a)(2).

The record likewise does not support the trial court's original conclusion that five of Spenny's prior convictions from New York counted toward his classification as a RFEL. *See* Trial Court Order, 11/4/14, at 1 n. 1. As Spenny accurately states, only four of his New York convictions could even arguably have counted towards his designation as a RFEL. *See* Spenny's Brief at 10. The supplemental PSI states that Spenny was sentenced at a single judicial proceeding for six convictions in Monroe County, New York—three for robbery in the third degree[5] and three for grand larceny in the third degree. Supplemental PSI at 5. He received a sentence of imprisonment for the first count of robbery and concurrent terms of imprisonment for the remaining convictions. *Id.*

4. N.Y. Law § 155.35.

5. N.Y. Penal Law § 160.05.

As such, this constitutes one prior conviction for Spenny's prior record score. *Janda*, 14 A.3d at 165. This conviction, if properly graded as an F2, also would count towards Spenny's classification as a RFEL. 204 Pa.Code § 303.4(a)(2).

Spenny was convicted of robbery in the third degree and escape after felony arrest[6] in Seneca County, New York, but only the robbery charge was graded as an F2. Supplemental PSI at 5. Thus, if properly graded, only the robbery charge would count towards a RFEL designation. 204 Pa.Code § 303.4(a)(2).

Lastly, Spenny was sentenced on five convictions in Ontario County, New York at a single judicial proceeding. His charges included two counts of robbery in the third degree, both scored as F2s, two counts of grand larceny in the third degree, scored as F3s, and one count of attempted robbery in the third degree, graded as an F2. Supplemental PSI at 5. He received consecutive sentences for the two F2 robbery convictions and the F3 grand larceny conviction, and concurrent sentences for his remaining convictions. *Id.* Therefore, for purposes of classifying Spenny as a RFEL, only the two Ontario County robbery convictions, if properly graded, would count, bringing the total F2 New York convictions that could even arguably have been included in designating Spenny as a RFEL to four. 204 Pa.Code §§ 303.4(a)(2), 303.5(b); *Janda*, 14 A.3d at 165.

The question remains whether the trial court properly classified Spenny's prior New York robbery convictions as F2s, or if, as Spenny claims, the trial court should have graded these offenses as F3s. *See* Spenny's Brief at 10–11. All of Spenny's New York robbery convictions were for robbery in the third degree, which New York law defines as follows: "A person is guilty of robbery in the third degree when he forcibly steals property. Robbery in the third degree is a class D felony." N.Y. Penal Law § 160.05. Spenny advocates for a strict elements analysis to determine the Pennsylvania equivalent for a prior, out-of-state conviction. *See* Spenny's Brief at 9–11. Pursuant thereto, Spenny contends that the Pennsylvania equivalent statute for his New York robbery convictions is 18 Pa.C.S.A. § 3701(a)(1)(v), which states: "A person is guilty of robbery if, in the course of committing a theft, he … physically takes or removes property from the person of another by force however slight[.]" Spenny's Brief at 11. Robbery under section 3701(a)(1)(v) is an F3, *see* 18 Pa.C.S.A. § 3701(b)(1), and Spenny therefore asserts that the trial court abused its discretion by sentencing him as a RFEL. Spenny's Brief at 10–11.

The trial court does not provide any indication of what it found to be the Pennsylvania equivalent statute for whatever convictions it considered when classifying Spenny as a RFEL. The Commonwealth suggests that the trial court found that the Pennsylvania equivalent statute to Spenny's Seneca County and Ontario County robbery convictions[7] was 18 Pa.C.S.A. § 3701(a)(1)(vi), which states:

A person is guilty of robbery if, in the course of committing a theft, he … takes or removes the money of a finan-

6. N.Y. Penal Law § 205.10.

7. The Commonwealth concedes that the supplemental PSI improperly graded Spenny's Monroe County robbery conviction as an F2, and should have been graded as an F3. Commonwealth's Brief at 2. It provides no explanation as to how it reached this conclusion, but we presume that this is based on the absence of supporting documentation concerning the Monroe County robbery to permit confirmation that the robbery was of a financial institution.

cial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

*See* Commonwealth's Brief at 3. The Commonwealth contends that section 3701(a)(1)(vi) is the Pennsylvania equivalent to N.Y. Penal Law § 160.05 because "both outlaw forcibly taking money from financial institutions." Commonwealth's Brief at 4. As robbery pursuant to section 3701(a)(1)(vi) is an F2, *see* 18 Pa.C.S.A. § 3701(b)(1), the Commonwealth contends that the trial court did not abuse its discretion by designating Spenny as a RFEL. Commonwealth's Brief at 4.

The documentation contained in the record detailing the factual bases underlying Spenny's Ontario County and Seneca County third-degree robbery convictions leaves no question that the robberies were of financial institutions. *See* Pre–Plea Investigation to Ontario County Court, 11/16/99, at 1–3; Pre–Plea Investigation to Seneca County Court, 11/22/99, at 2–4. On the other hand, even a cursory review of New York's third-degree robbery statute leads to the inescapable conclusion that a strict-elements approach would preclude a finding that Pennsylvania's robbery of a financial institution, section 3701(a)(1)(vi), is its equivalent offense. Therefore, the decision in this matter turns on whether (and if so, at what stage) courts are to look to the facts underlying a defendant's prior, out-of-state conviction to determine the Pennsylvania equivalent offense for sentencing purposes.

In *Commonwealth v. Bolden*, this Court first addressed the question of the proper procedure for grading a prior, out-of-state conviction for prior record score purposes.[8] In that case, the trial court calculated the defendant's prior record score, adding two points thereto for a prior conviction of attempted burglary that occurred in Colorado, finding that the Pennsylvania equivalent offense was attempted burglary, an F2. *Bolden*, 532 A.2d at 1173–74. On appeal, Bolden challenged the trial court's calculation of his prior record score because of its inclusion of the Colorado conviction as equivalent to attempted burglary in Pennsylvania.

Guided by the Statutory Construction Act[9] and the Sentencing Commission's goal when enacting the Sentencing Guidelines "of promoting uniformity and fairness in sentencing," the *Bolden* Court established a test to determine the Pennsylvania statute that is equivalent to an out-of-state conviction appearing on a defendant's criminal record:

> In assessing the quality of a prior conviction in a foreign jurisdiction, we discern from the purpose and language of the guidelines that it was the intent of the Sentencing Commission as well as the legislature that offense equivalency be considered in terms of the nature and definition of the offense in light of the record of the foreign conviction. This approach requires a sentencing court to carefully review the elements of the foreign offense in terms of the classification of the conduct proscribed, its definition of the offense, and the requirements for culpability. Accordingly, the court may

---

**8.** *Bolden* was decided under a prior version of the Sentencing Guideline Code. However, the relevant language requiring that a prior conviction from another jurisdiction "is scored as a conviction for the current equivalent Pennsylvania offense" remains unchanged in the current, amended version. *Compare* 204 Pa. Code § 303.7(d) (effective June 5, 1986 to Aug. 12, 1994) *with* 204 Pa.Code § 303.8(f)(1) (effective Sept. 27, 2013).

**9.** 1 Pa.C.S.A. §§ 1501–1991.

want to discern whether the crime is malum in se or malum prohibitum, or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by the statute, e.g. protection of the person or protection of property. It will also be necessary to examine the definition of the conduct or activity proscribed. In doing so, the court should identify the requisite elements of the crime—the actus reus and mens rea—which form the basis of liability.

Having identified these elements of the foreign offense, the court should next turn its attention to the Pennsylvania Crimes Code for the purpose of determining the equivalent Pennsylvania offense. An equivalent offense is that which is substantially identical in nature and definition as the out-of-state or federal offense when compared with Pennsylvania offense. The record of the foreign conviction will be relevant also when it is necessary to grade the offense under Pennsylvania law or when there are aggravating circumstances.

*Id.* at 1175–76 (footnotes and italicization omitted).

The *Bolden* Court undertook a comparison of the definition of the criminal statutes associated with Bolden's Colorado conviction, criminal attempt (Colo.Rev. Stat. § 18–2–101(1)) and burglary in the second degree (Colo.Rev.Stat. § 18–4–203(1)), with Pennsylvania's attempt and burglary statutes, 18 Pa.C.S.A. §§ 901, 3502(a). Although the Court stated that offense equivalency should be determined "in light of the record of the foreign con-

viction," it did not undertake any examination or discussion of the factual predicate for Bolden's Colorado conviction. Instead, based solely upon the definitions of the Colorado and Pennsylvania statutes, the Court concluded:

> Both the Colorado and Pennsylvania criminal attempt statutes share identical elements as to the actus reus—a substantial step toward the commission of the underlying crime—as well as to the mens rea—specific intent to commit the underlying offense. Additionally, we are satisfied that the underlying specific offense of burglary is equivalent in Colorado and Pennsylvania. Both statutes require an entry into or occupation of a building or occupied structure with the specific intent to commit a crime therein. Once again, there is identity of both nature and definition and therefore offense equivalency. Since **the fundamental inquiry is to the elements of the offense,** it is irrelevant that Pennsylvania has but one grade for burglary.

*Bolden,* 367 Pa.Super. 333, 532 A.2d 1172, 1177 (emphasis added; italicization omitted).

In the years that followed, our Supreme Court adopted the *Bolden* test for determining the Pennsylvania equivalent offense for prior, out-of-state convictions in other areas of the law.[10] First, in *Commonwealth v. Shaw,* 560 Pa. 296, 744 A.2d 739 (2000), our Supreme Court adopted the *Bolden* test for "determining whether in-state and out-of-state offenses are 'equivalents'" pursuant to 75 Pa.C.S.A. § 3731(e)(1) (repealed effective Feb. 1, 2004).[11] In *Shaw,* the defendant chal-

---

10. This Court has also adopted the *Bolden* test for determining the Pennsylvania equivalent offense in other areas of the law. *See, e.g., Commonwealth v. Barbaro,* 94 A.3d 389, 394 (Pa.Super.2014) (applying the *Bolden* test for determining the Pennsylvania equivalent to a prior, out-of-state conviction under the Recidivism Risk Reduction Incentive Act).

11. A plurality of our Supreme Court first adopted the *Bolden* test for determining the Pennsylvania equivalent of a prior, out-of-

lenged the trial court's finding that his prior New York conviction of driving while ability impaired ("DWAI"), N.Y. Veh. & Traf. Law § 1192(1), was equivalent to Pennsylvania's driving under the influence of alcohol ("DUI"), 75 Pa.C.S.A. § 3731(a)(1), and sentencing Shaw as a recidivist pursuant to section 3731(e)(1)(iii). *Shaw*, 744 A.2d at 740. Upon conducting a review of the two statutes at issue, the *Shaw* Court found:

> It logically follows that although both Pennsylvania's DUI offense and New York State's DWAI offense are designed to protect the person and prohibit drunk driving, New York State's DWAI offense protects the public from a broader range of reckless behavior than does Pennsylvania's DUI offense. This is due to the fact that New York State's DWAI offense casts a wider net of criminal liability, making it criminal for individuals to drink to the point of **any impairment** and then proceed to operate a motor vehicle, while Pennsylvania's DUI offense only makes it criminal for individuals to drink to the point of **substantial impairment** and then proceed to operate a motor vehicle. Thus, there is an appreciable difference in the elements of the in-state and out-of-state offenses at issue, and a corresponding difference in the conduct prohibited by the offenses which preclude a finding that the offenses are "equivalents".

*Id.* at 744–45 (footnote omitted; emphasis in the original). On that basis alone, without examining the facts attendant to the defendant's prior conviction, the Supreme Court held "that N.Y. Veh. & Traf. Law § 1192(1) is not 'equivalent' to 75 Pa.C.S. § 3731(a)(1) for purposes of determining

whether [Shaw] was a two-time repeat offender, and therefore subject to the 90 day mandatory minimum sentencing provision set forth at 75 Pa.C.S. § 3731(e)(1)(iii)." *Id.* at 745.

Our Supreme Court also adopted the *Bolden* test in *Commonwealth v. Northrip*, 603 Pa. 544, 985 A.2d 734 (2009), to determine the Pennsylvania equivalent offense for a prior, out-of-state conviction under the "Three Strikes Law," 42 Pa.C.S.A. § 9714. In *Northrip*, our Supreme Court was again called upon to determine whether a New York statute, this time third-degree arson (N.Y. Penal Law § 150.10), was equivalent to Pennsylvania's statute defining arson endangering persons (18 Pa.C.S.A. § 3301(a)(1)), such that the defendant's prior conviction for third-degree arson in New York constituted a "crime of violence" under section 9714(g). *Northrip*, 985 A.2d at 736. Following its comparison of the two statutes, the Court concluded:

> [T]he New York statute and the Pennsylvania statute are not equivalent for purposes of applying Section 9714. At first glance, the laws appear to have similar elements and burdens of proof. Both punish a person for intentionally setting a structure on fire and both define the word structure to include a place of business. However, the framework of the two statutory schemes reflects striking differences in terms of the classification of the conduct proscribed and the subject matter sought to be protected. First, the New York statute describes a third-degree felony; the Pennsylvania provision describes a felony of the first-degree. Moreover, the New York law focuses plainly on the protection of property. The Pennsylva-

state DUI conviction for purposes of section 3731(e)(1) in *Commonwealth v. Robertson*, 555 Pa. 72, 722 A.2d 1047 (1999) (plurality). In *Shaw*, the Court "formally" adopted this approach to determining the Pennsylvania equivalent offense pursuant to 75 Pa.C.S.A. § 3731(e)(1). *Shaw*, 744 A.2d at 743.

nia law decidedly does not. Significantly, the Pennsylvania subsection is titled "arson endangering persons" and a different, separate subsection is titled "arson endangering property." 18 Pa.C.S. § 3301(c). Pennsylvania punishes, as a second-degree felony, the deliberate starting of a fire with the intent to destroy or damage a building or structure adapted for carrying on business. Likewise significant is the fact that New York's other arson statutes specifically address injury to persons and assign higher grades to those offenses. *See* N.Y. Penal Law §§ 150.15 (arson in the second-degree) and 150.20 (arson in the first-degree).

In light of the material differences between these two statutes, we conclude that the Superior Court was correct in determining that the New York offense was not equivalent to the Pennsylvania offense.

*Id.* at 741–42 (citation to Shaw and footnote omitted).

The Commonwealth argued that courts were required to consider the factual record underlying a defendant's prior conviction, which, in that case, would have revealed that Northrip set fire to a business, rendering him culpable under 18 Pa.C.S.A. § 3301(a), and in turn, making section 3301(a) the Pennsylvania equivalent for purposes of section 9714. *Id.* at 740–41 & n. 8. The *Northrip* Court disagreed that it was necessary to consider the factual record of the prior conviction "in every instance" to determine the Pennsylvania equivalent offense. *Id.* at 740. In concluding that this case did not warrant a review of the factual record, the Court looked to the language of section 9714(g), which, at the time of the *Northrip* decision, stated:

As used in this section, the term "crime of violence" means murder of the third

degree, voluntary manslaughter, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson as defined in 18 Pa.C.S. § 3301(a) (relating to arson and related offenses), kidnapping, burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present, robbery as defined in 18 Pa. C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), or robbery of a motor vehicle, or criminal attempt, criminal conspiracy or criminal solicitation to commit murder or any of the offenses listed above, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S.A. § 9714(g) (revised July 7, 2011, effective Sept. 6, 2011). The Court observed that the Legislature's focus for all of the listed crimes, other than burglary, was the particular statutory subsection for which the defendant stood convicted, not the facts underlying the conviction. *Northrip*, 985 A.2d at 741. Section 9714(g) only required the trial court to examine the facts of a prior burglary conviction (for which no statutory subsection was listed) to determine whether that conviction was a crime of violence. The Court thus concluded:

This very specific and deliberate method of defining crimes of violence in Section 9714 demonstrates the Legislature's clear intent that with respect to all crimes except burglary, the focus is on the crime for which the defendant was convicted, not the factual scenario underlying that crime. Section 9714 both directs and limits the sentencing court's inquiry. In keeping with the

statute's mandate then, we must focus on the crime of arson and its elements, not the facts underlying [the defendant]'s conviction.

*Id.*

Justice (now Chief Justice) Saylor joined the *Northrip* Majority, but also authored a concurring opinion, stating:

I write separately only to note the inherent limitations of a strict elemental equivalency analysis such as is reflected in Section 9714 of the Judicial Code, 42 Pa.C.S. § 9714, as I believe such limitations are highlighted by the circumstances of the present case. Examining the undisputed facts underlying [Northrip]'s New York arson conviction—that [Northrip] intentionally burned a building housing a business—it is apparent that [Northrip]'s conduct, if committed in Pennsylvania, would have supported a conviction under Pennsylvania's "[a]rson endangering persons" statute. Indeed, given the substantial overlap between the New York and Pennsylvania statutes, it is certainly possible that the General Assembly did not contemplate that such conduct would elude the enhanced sentencing equation under Section 9714.

On the other hand, various complexities attend the administration of an enhancement scheme accounting for specific factual elements, including: provision for the determination of particular facts in a system employing general verdicts; and the involvement of constitutional issues connected with sentencing enhancements, such as those arising under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In the face of such complexities, and consistent with the application of judicial re-

straint in defining the scope of criminal liability, I continue to support the notion that "equivalent crimes" are to be evaluated at an elemental level, absent more specific direction from the Legislature. *Accord Commonwealth v. Shaw,* 560 Pa. 296, 744 A.2d 739 (2000). To the degree the General Assembly wishes to effectuate a change, there are various models available, which may be studied in devising a clear and coherent statutory framework that is consistent with governing law.

*Id.* at 744–45 (Saylor, J., Concurring) (footnotes omitted).

Subsequent to the *Northrip* decision, the Legislature did act, but in the opposite manner Justice Saylor predicted. Instead of amending section 9714 to require courts to review the facts underlying a prior, out-of-state conviction to determine its Pennsylvania equivalent, the Legislature removed from section 9714 the factual determination required for a burglary conviction, replacing it with a specific subsection of the burglary statute. *See* 42 Pa.C.S.A. § 9714(g) (as amended July 5, 2012, effective Sept. 4, 2012).[12]

 It is a long-standing presumption that the Legislature is aware of the judiciary's construction and interpretation of statutes. *See, e.g., City of Philadelphia v. Clement & Muller, Inc.,* 552 Pa. 317, 715 A.2d 397, 399 (1998). Furthermore,

[w]hen confronted with questions of statutory construction, the words of a statute are to be interpreted in light of antecedent case law. . . . The failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with

---

12. This amendment coincided with the Legislature's amendment of the burglary statute, which incorporated the previously required factual determination into the definition of burglary under section 3502(a)(2). *See* 18 Pa.C.S.A. § 3502(a)(1).

the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment. *Fonner v. Shandon, Inc.*, 555 Pa. 370, 724 A.2d 903, 906 (1999) (internal citations omitted); *see also* 1 Pa.C.S.A. § 1922(4) ("In ascertaining the intention of the General Assembly in the enactment of a statute[, it may be presumed] . . . [t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."). Thus, by amending section 9714(g) to remove any factual analysis of the prior, out-of-state conviction, we presume that the Legislature did so with the intent of adopting the Supreme Court's strict-elements interpretation of the *Bolden* test.

 We therefore conclude that when determining the Pennsylvania equivalent statute for a prior, out-of-state conviction for prior record score purposes, courts must identify the elements of the foreign conviction and on that basis alone, identify the Pennsylvania statute that "is substantially identical in nature and definition" to the out-of-state offense. *Bolden*, 532 A.2d at 1176. Courts are not tasked with ascertaining the statute under which the defendant would have been convicted if he or she had committed the out-of-state crime in Pennsylvania. Rather, we must compare "the elements of the

foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability" to determine the Pennsylvania equivalent offense. *Northrip*, 985 A.2d at 740 (quoting *Shaw*, 744 A.2d at 743).[13]

 This is not to say that the facts underlying the prior conviction are wholly irrelevant when determining the Pennsylvania equivalent statute. Once the court conducts an analysis of the elements of the foreign offense and finds the Pennsylvania offense that "is substantially identical in nature and definition" to the out-of-state statute, *Bolden*, 532 A.2d at 1176, the underlying record of the foreign offense may need to be considered for grading purposes. *See id.* (stating that the record of the prior conviction is relevant for grading the offense under Pennsylvania law or when there are aggravating circumstances); *see also Janda*, 14 A.3d at 166 (remanding the case for the trial court to consider the record of the defendant's prior New Jersey offense to determine whether the Pennsylvania equivalent of writing bad checks, 18 Pa.C.S.A. § 4105, should be graded as a summary, misdemeanor or felony for prior record score purposes).

Applying these principles to the case at bar, we agree with Spenny that the trial court improperly graded his New York convictions of third-degree robbery as F2s. The elements of New York's third-degree

---

13. To decide otherwise would not only run contrary to the above-cited case law, but could also implicate due process concerns. In some cases, courts in this Commonwealth would be serving as factfinder on the prior offense, adding an element to the defendant's conviction that the defendant did not admit to in a plea or was not decided by a jury. Take, for example, a defendant who, based on the facts, committed in another jurisdiction what would be aggravated assault in Pennsylvania, but was convicted in the other state only of what would be simple assault in Pennsylvania (either by a jury or through a plea agreement). For a Pennsylvania court to grade the prior conviction as an aggravated assault (a felony in Pennsylvania, *see* 18 Pa.C.S.A. § 2702(b)) instead of simple assault (a Pennsylvania misdemeanor, *see* 18 Pa.C.S.S. § 2701(b)) based upon the details of the underlying offense as contained in the other state's record would be akin to resentencing the defendant without any of his or her constitutionally guaranteed protections.

robbery include proof that the defendant (1) stole property by force; (2) from another person; (3) with the intent to deprive the other person of the property. *See* N.Y. Penal Law §§ 155.05 (defining larceny), 160.00 (defining robbery), 160.05. The elements for Pennsylvania's robbery of a financial institution—the F2 advocated for by the Commonwealth as the Pennsylvania equivalent—are: (1) taking or removing money from a financial institution; (2) by making a demand of a financial institution employee either orally or in writing; (3) with the intent to deprive the financial institution of the money. *See* 18 Pa.C.S.A. §§ 3701(a)(1)(vi), 3921(a) (defining theft of movable property by unlawful taking). The New York statute, which prohibits robbery generally, is far broader than Pennsylvania's robbery of a financial institution, which criminalizes only robberies of financial institutions. Although both statutes requiring a taking with the intent to deprive, there is no additional confluence of elements between the two statutes, and it certainly cannot be said that the two statutes are "substantially identical in nature and definition." *Bolden*, 532 A.2d at 1176. As in *Shaw*, "there is an appreciable difference in the elements of the in-state and out-of-state offenses at issue, and a corresponding difference in the conduct prohibited by the offenses which preclude a finding that the offenses are 'equivalents'." *Shaw*, 744 A.2d at 745.

Rather, we agree with Spenny that the Pennsylvania equivalent statute to N.Y. Penal Law § 160.05 is robbery under subsection 3701(a)(1)(v)—an F3. *See* 18 Pa. C.S.A. § 3701(b)(1). The elements of 3701(a)(1)(v) are: (1) taking or removing property by force (however slight); (2) from another person; (3) with the intent to deprive that person of the property. *See* 18 Pa.C.S.A. §§ 3701(a)(1)(v), 3921(a). The actus reus and mens rea of Pennsylvania's section 3701(a)(1)(v) robbery is nearly identical to the actus reus and mens rea of New York's third-degree robbery. Just as in *Bolden*, "there is identity of both nature and definition and therefore offense equivalency." *Bolden*, 532 A.2d at 1177.

The trial court abused its discretion by grading Spenny's prior New York robbery convictions as F2s, as each of the convictions should have been graded as F3s. Therefore, the trial court should not have considered any of Spenny's prior New York convictions in determining whether he qualified as a RFEL. *See* 204 Pa.Code § 303.4(a)(2).

■ This does not end our inquiry. While neither the trial court nor the Commonwealth provide any argument to support a finding that the RFEL designation was proper in the absence of the New York convictions, the law is clear that we may affirm the trial court's decision on any proper basis. *Commonwealth v. Boyles*, 104 A.3d 591, 596 (Pa.Super.2014). Therefore, we examine the remaining convictions includable in the calculation of Spenny's prior record score to determine whether the trial court nonetheless correctly determined that Spenny qualified as a RFEL.

Beginning with Spenny's federal convictions, the supplemental PSI reflects that Spenny was sentenced to concurrent terms of imprisonment for eleven counts of bank robbery at a single sentencing hearing. Supplemental PSI at 4. Therefore, only one conviction of bank robbery is included in calculating Spenny's PSI. *See* 204 Pa. Code § 303.5(b); *Janda*, 14 A.3d at 165. The federal bank robbery statute provides:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, manage-

ment, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined under this title or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall

be fined under this title or imprisoned not more than one year, or both.

(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value which has been taken or stolen from a bank, credit union, or savings and loan association in violation of subsection (b), knowing the same to be property which has been stolen shall be subject to the punishment provided in subsection (b) for the taker.

18 U.S.C.A. § 2113(a)–(c).

The trial court again provides no indication of which Pennsylvania statute it considered the equivalent to section 2113. The Commonwealth contends that equivalent statute is Pennsylvania's robbery of a financial institution, 18 Pa.C.S.A. § 3701(a)(1)(vi). *See* Commonwealth's Brief at 2. Depending on the subsection of section 2113 under which Spenny was convicted, we agree that section 3701(a)(1)(vi) could be the Pennsylvania equivalent offense.[14] As Spenny does not challenge the classification of this offense as an F2,[15] we decline to disturb the trial court's grading of Spenny's federal bank robbery conviction as an F2. As such, this offense adds two points to Spenny's prior record score. *See* 204 Pa.Code §§ 303.7(a)(3), 303.15.

Turning to Spenny's Arizona convictions, the record reflects that he was sentenced to concurrent terms of imprisonment on charges of armed robbery and robbery at a single sentencing hearing. Supplemental PSI at 3. The most serious offense,

14. *Section 2113(c), for example, criminalizes receiving, possessing, concealing, storing, bartering, selling or disposing of money or property that the defendant knew was stolen from a bank or financial institution, which would not constitute the act of taking or removing money from a financial institution required by Pennsylvania's section 3701(a)(1)(vi). Rather, section 2113(c) would be equivalent to Pennsylvania's receiving stolen property statute, 18 Pa.C.S.A. § 3925(a),* which could be graded anywhere from a misdemeanor to an F1 for prior record score purposes. *See* 204 Pa.Code § 303.15.

15. On appeal, Spenny challenged only the classification of his New York convictions as F2s and argued on that basis that the trial court abused its discretion by classifying him as a RFEL. *See* Spenny's Brief at 9–11.

armed robbery, is graded in the supplemental PSI as an F2 with a notation that it was a robbery of a financial institution.[16] *Id.* Arizona law defines armed robbery as follows:

A. A person commits armed robbery if, in the course of committing robbery as defined in § 13–1902, such person or an accomplice:

1. Is armed with a deadly weapon or a simulated deadly weapon; or

2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon.

B. Armed robbery is a class 2 felony. A.R.S. § 13–1904. "A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13–1902(A).

The trial court states that Spenny's Arizona conviction "should have been scored as [an F1]," but does not indicate how it arrived at that determination. In the absence of any guidance from the trial court as to what statute it utilized as the Pennsylvania equivalent, we again turn to the Commonwealth, which once again advocates for section 3701(a)(1)(vi) as the Pennsylvania equivalent offense, as "[e]ach statute outlaws bank robbery." Commonwealth's Brief at 1–2. Accepting this designation, the Arizona ·armed robbery would be graded as an F2 and would add an additional two points to Spenny's prior record score. *See* 18 Pa.C.S.A. § 3701(b)(1); 204 Pa.Code §§ 303.7(a)(3),

303.15. This would bring Spenny's total F1 and F2 convictions in his prior record score to four points, which is insufficient for classification as a RFEL, as the Sentencing Guidelines Code requires a total of six points for F1 and/or F2 convictions in Spenny's prior record to be categorized as a RFEL. *See* 204 Pa.Code § 303.4(a)(2).

We note, however, that Arizona's section 13–1904 outlaws robberies committed with a deadly weapon. As our above-discussion makes clear, this is not the same conduct proscribed by section 3701(a)(1)(vi)—the elements are not the same, nor are the requirements for culpability. *See Northrip*, 985 A.2d at 740. We therefore disagree that section 3701(a)(1)(vi) is the equivalent offense to Arizona's section 13–904. Indeed, we are unable to find any equivalent offense in Pennsylvania to Arizona's section 13–1904. Section 13–1904 punishes not only the use or threat to use a deadly weapon during the commission of a robbery, but also the mere possession of a deadly weapon or simulated deadly weapon during the commission of a robbery. *See* A.R.S. § 13–1904(A); *see also State v. Snider*, 233 Ariz. 243, 311 P.3d 656, 658–59 (App.2013) ("§ 13–1904(A)(1) does not require the use or threatened use of the weapon, only that a defendant is 'armed with a deadly weapon' during the commission of the crime"). There is no section of the Pennsylvania robbery statute that criminalizes the mere possession of a deadly weapon while committing a robbery. *See generally* 18 Pa.C.S.A. § 3701(a)(1). Rather, Pennsylvania law requires that the defendant either inflict or threaten to inflict serious bodily injury

---

16. As stated hereinabove, the documentation appended to Probation's memo indicates that the robberies underlying Spenny's Arizona convictions were of a Mobil Gas Station, a Yogurt Express and a person, not a financial institution. Further, the trial court in its decision denying Spenny's post-sentence motion refers to the Arizona conviction as an armed robbery "of a service station." Trial Court Order, 11/4/14, at 1 n. 1.

during the course of a robbery. *See* 18 Pa.C.S.A. § 3701(a)(1)(i), (ii).[17]

Therefore, pursuant to the Sentencing Guideline Code, we look to the grade of the offense based on the maximum sentence permitted for armed robbery in Arizona. 204 Pa.Code 303.8(d)(2), (f)(3). Arizona divides its felony offenses into six classes, with a class one felony being the most serious and a class six felony the least serious. *See* A.R.S. § 13–601(A). Arizona further delineates its felony classes into "dangerous" and "nondangerous" offenses, which markedly changes the classification of the conviction for sentencing purposes. *See* A.R.S. §§ 13–702, 13–704.

According to section 13–1904, "Armed robbery is a class 2 felony." A.R.S. § 13–1904(B). The record reflects that the Arizona court designated Spenny's armed robbery conviction as "nondangerous" and "nonrepetitive." Arizona Sentencing Order, 5/27/86, at 8. For such class two offenses, the Arizona Legislature established a ten-year "maximum" sentence, but further permits an "aggravated" sentence of twelve and a half years if the sentencing court finds "at least two of the aggravated factors listed in § 13–701, subsection D apply[.]" A.R.S. § 13–702(B), (D).

The Arizona sentencing provisions permitting sentencing above the "maximum" sentence are in contrast to established law in Pennsylvania. In Pennsylvania, a person convicted of a felony may be sentenced to a term of imprisonment of no more than twenty years for an F1, ten years for an F2, and seven years for an F3. 18 Pa. C.S.A. § 1103. These constitute the statutory maximum sentences allowed; a sentence of imprisonment above these stated terms would constitute an illegal sentence.

---

17. A conviction of robbery under either section 3701(a)(1)(i) or (ii) constitutes an F1 and would add four points to a defendant's prior record score. 18 Pa.C.S.A. § 3701(b)(1); 204 Pa.Code § 303.15.

*See Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189 (2005) (stating that a sentence that exceeds the lawful maximum provided by statute is illegal).

It is clear that Arizona's sentencing provisions are not consistent with Pennsylvania sentencing laws. We must therefore treat Spenny's Arizona armed robbery conviction as an F3, which would exclude the conviction from consideration in classifying Spenny as a RFEL. 204 Pa.Code 303.8(d)(2), (f)(3).

The trial court erred in determining Spenny's prior record score and incorrectly classified him as a RFEL. We therefore vacate Spenny's judgment of sentence and remand for the recalculation of his prior record score, followed by resentencing. *See Janda,* 14 A.3d at 166.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.