J-A08001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY ANTHONY SUTTON | : | |
| | : | |
| Appellant | : | No. 964 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 31, 2023
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000693-2019

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 12, 2024**

Troy Anthony Sutton appeals from the aggregate judgment of sentence of forty to eighty years in prison following his convictions of, *inter alia*, robbery and kidnapping.  We affirm the judgment of sentence entered March 31, 2023.[1]

_____

[1] After Appellant filed an appeal in this matter, the trial court purported to amend the sentence via order entered on August 4, 2023, which declared that several concurrent sentences initially imposed on March 31, 2023, merged for sentencing purposes.  The amended sentencing order did not impact the length of the aggregate sentence.  However, since an appeal had been taken, the trial court lacked the authority to amend its initial sentencing order, and therefore this amendment is a legal nullity.  *See* 42 Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within [thirty] days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed").  While this Court may address *sua sponte* matters concerning the legality of a sentence, such as the application of the merger doctrine to certain offenses, we decline to do so here because we lack either the trial court's rationale or the advocacy of the parties as to this issue.

J-A08001-24

The trial court summarized the factual background of this matter thusly:

On November 18, 2019, [Appellant] and six others attempted to take control of the Administrative Center ("Clubhouse") of the Pine Ridge Residential Community ("Pine Ridge") located in Lehman Township, Pike County, Pennsylvania, by force. At approximately 12:45 p.m., the Pennsylvania State Police barracks in Blooming Grove, Pike County, received a call indicating that five males with firearms, later identified as Sekou Rashid-Abdullah, Sushane Adams-Heylinger, Adam Abdur-Rahim, Musa Abdur-Rahim, and Appellant (collectively, "Assailants"), had smashed windows to gain access to the Clubhouse and that office workers Shirley Kennedy ("Kennedy"), Shante Fountaine ("Fountaine"), and Community Manager William White ("White") were trapped inside. Evidence presented at trial showed that Anthony Bonito ("Chief Bonito"), Chief of Public Safety for Pine Ridge, was engaged in the community at the time and that John Derbyshire ("Derbyshire"), a public safety officer, was inside the Clubhouse when the assault began.

As Assailants forced entry to the upper level of the two-level Clubhouse, Kennedy, Fountaine, and White sheltered inside White's office located in the lower level. Meanwhile, Derbyshire secured the lower level and verbally confronted Assailants through a heavy door as they attempted to force entry to the lower level via an indoor stairway. Assailants then exited the upper level of the Clubhouse, forced entry to the lower level from the outside, confronted, disarmed, and forcibly detained Derbyshire inside the Public Safety Office. At some point, Chief Bonito returned and confronted Assailants from just outside the Public Safety Office door, but retreated upon realizing that Derbyshire was being forcibly detained within. As Chief Bonito retreated to observe, report to, and eventually assist the Pennsylvania State Police, Assailants ransacked the Public Safety Office, taking various items, including but not limited to body armor, weapons, vehicle keys, and walkie-talkies, before exiting with Derbyshire and returning to the Clubhouse parking lot. Assailants then commandeered Derbyshire's truck, emptied it of his personal belongings, and attempted to leave Pine Ridge with Derbyshire in tow using their own two vehicles, Derbyshire's private vehicle, and a Pine Ridge Public Safety vehicle driven by Appellant using keys he had taken from the Public Safety Office. Assailants then attempted to drive out of Pine Ridge using the only available road

but were blocked by Pine Ridge maintenance workers and eventually taken into custody by responding Pennsylvania State Police Troopers. Appellant, having fallen behind while driving the Public Safety vehicle, became lost in his attempt to leave the community. After the State Police cleared the Clubhouse, Appellant was spotted in the stolen Public Safety vehicle, was pursued, and surrendered to law enforcement.

Trial Court Opinion, 8/11/23, at 1-3 (unnecessary capitalization, articles, and repetition of amounts in numerical form omitted).

Appellant was subsequently charged with thirty-six separate crimes relating to his role in the incident. The Commonwealth filed a notice to jointly try Appellant with two of the co-defendants, Adam Abdur-Rahim and Musa Abdur-Rahim.

The parties first attempted to select a jury on September 13, 2021. Since this occurred in the midst of the COVID-19 pandemic, the pool of venirepersons was smaller than typical. During selection, counsel and the trial court questioned potential jurors about whether they had learned information about the case from media and other sources, to which a number responded positively. However, the record is not clear as to what percentage of potential jurors had preexisting knowledge of the matter. After several jurors were struck for cause, the defense attorneys made a joint motion to dismiss the panel and attempt jury selection with a larger pool at a later date. The Commonwealth deferred to the trial court's decision, and the court granted the motion.

Several months afterwards, in January 2022, Appellant filed a counseled motion for change of venue/venire on the basis that he would not be able to

obtain a fair and impartial jury within Pike County. The court scheduled a hearing on the motion, wherein Appellant presented argument but no testimony or evidence. Appellant's position was that because some of the prior prospective jurors acknowledged that they were biased against the co-defendants based on the incident, it would not be possible to empanel a fair jury.[2] The court ultimately denied the request and the parties selected a jury.

Trial was set to begin on January 26, 2023. Several days before, the Commonwealth filed a motion *in limine* to preclude evidence or testimony concerning ownership of the lands upon which Pine Ridge was located, asserting that such evidence was irrelevant to the charges and was likely to confuse the jury. The motion was filed in anticipation that Appellant would offer the defense that he was rightfully entitled to retake the land as either private security or tribal police on behalf of Tonia Scott, a woman proclaiming to own the land based on her native ancestral heritage. After argument, the court granted the motion to preclude such evidence.

At trial, multiple witnesses attested to the above background. Derbyshire did not testify, as he had passed away between the time of the incident and trial. Accordingly, the Commonwealth had a witness read into the record Derbyshire's testimony from a prior hearing. Additionally, over Appellant's hearsay and authentication objections, the trial court allowed the

_____

[2] In the motion, Appellant cited only one instance in the record where a panel member affirmatively stated a predisposition to a guilty verdict based upon knowledge of the case.

Commonwealth to introduce a recording of footage taken during the event from Derbyshire's bodycam, which he activated shortly before Assailants forced entry into the building. To authenticate the video, the Commonwealth called Chief Bonito, who stated that he downloaded the footage himself when he found the bodycam shortly after Assailants were apprehended.

Appellant testified in his defense. He stated that he met Tonia Scott by chance approximately a month before the incident while working as a security guard at a McDonald's restaurant in Times Square in New York City. He provided her with the contact information of co-defendant Adam Abdur-Rahim, who owned a security company. Appellant attested that Adam Abdur-Rahim then hired him for the job of ejecting aggressive trespassers from Pine Ridge and a neighboring community, which Appellant intended to be a one-day job and for which he was to be paid $1,000. Despite the trial court's ruling on the motion *in limine*, Appellant claimed that Tonia Scott had legal papers demonstrating her ownership of the land and that he was given authority to remove the trespassers in his capacity as a security officer or tribal police. The remainder of his testimony concerned his actions during the attack and his assertion that the goal was simply to remove Derbyshire and his belongings to the entrance of Pine Ridge and leave them there.

Based on this testimony and that from the other co-defendants, Appellant requested that the trial court provide the jurors with an instruction from § 8.304 of the Pennsylvania Suggested Standard Criminal Jury Instructions, concerning "ignorance or mistake." The contention was that if

the jury found that Appellant reasonably believed that Tonia Scott owned the land in question, it could negate the *mens rea* as to some or all the crimes. The court denied the request.

At the conclusion of trial, the jury found Appellant guilty of the following crimes:

- One count each of kidnapping, false imprisonment, unlawful restraint, robbery of a motor vehicle, theft by unlawful taking property in excess of $2,000, criminal attempt to commit theft by unlawful taking, burglary, firearms not to be carried without a license, and possessing a concealed weapon;

- two counts each of simple assault and recklessly endangering another person ("REAP");

- three counts of terroristic threats; and

- six counts of robbery.

The trial court also found him guilty of one count of criminal mischief relating to breaking window glass at the Clubhouse.[3]

On March 31, 2023, the parties appeared for sentencing. The Commonwealth asserted that Appellant had a prior record score ("PRS") of four arising from a 1988 California conviction for battery with serious bodily injury, which it believed was equivalent to a conviction of aggravated assault–causing serious bodily injury in Pennsylvania. In support, the Commonwealth called probation officer Andrew King, who testified that information concerning the 1988 conviction was readily available to him through a search of the

---

[3] The charge was severed from the others at trial at the Commonwealth's request and without objection from any of the co-defendants.

- 6 -

National Crime Information Center, which he used in preparation of Appellant's pre-sentence investigation report. Appellant objected to consideration of the conviction on the basis that it had been expunged. However, he provided no evidence or testimony in support of that claim. The court calculated a PRS of four, and sentenced Appellant to an aggregate of forty to eighty years in jail, with some of the individual sentences based upon a deadly-weapon-used enhancement.

Appellant timely filed a motion for reconsideration, wherein he objected to the calculation of his PRS and the length of his sentence. The court denied the motion without a hearing. This timely appeal followed.[4] The court ordered Appellant to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. The court issued an opinion addressing his claims.

Appellant presents the following ten issues for our review, which we have reordered for ease of disposition:

    I.    Did the trial court abuse its discretion as the evidence was insufficient to support the verdict on all counts?

    II.    Did the trial court abuse its discretion with the verdict as to all counts as it was against the weight of the evidence?

    III.    Did the trial court abuse its discretion in granting the Commonwealth's motion *in limine* prohibiting any evidence or

---

[4] Co-defendants Musa Abdur-Rahim and Adam Abdur-Rahim also filed appeals in this Court. Those are docketed at 1059 EDA 2023 and 1060 EDA 2023, respectively.

> testimony including but not limited to the testimony of [Tonia] Scott and [Keeba] Harris, relative to [Appellant]'s mistake of fact?
>
> IV.   Did the trial court abuse its discretion in denying [Appellant]'s proposed jury instructions?
>
> V.    Did the trial court abuse its discretion in allowing the bodycam footage and other hearsay evidence relative thereto of John Derbyshire to be admitted into evidence?
>
> VI.   Did the trial court abuse its discretion in denying [Appellant]'s motion for change of venue/venire?
>
> VII.  Did the trial court abuse its discretion in sentencing [Appellant] to a period of forty . . . to eighty . . . years of incarceration?
>
> VIII. Did the trial court abuse its discretion in applying the deadly weapon used enhancement?
>
> IX.   Did the trial court abuse its discretion in determining [Appellant]'s [PRS]?
>
> X.    Did the trial court abuse its discretion in denying [Appellant]'s post-sentence motion for reconsideration?

Appellant's brief at 16-18 (cleaned up).

In his first issue, Appellant challenges the sufficiency of the evidence underlying his convictions. *See* Appellant's brief at 42-43. We consider Appellant's position mindful of the following well-settled standard of review:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

- 8 -

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up).

We note initially that Appellant's question presented challenges the sufficiency of the evidence as to **all** counts. *See* Appellant's brief at 18. However, in the argument section of his brief, he only assails the convictions for robbery, theft by unlawful taking, and burglary. More specifically, Appellant claims that counts eight and nine, both relating to robbery, were insufficiently proven due to a lack of testimony concerning serious bodily injury. *Id*. at 43. He likewise asserts that the conviction for theft by unlawful taking should be vacated because there was no testimony regarding the value of the property stolen. *Id*. Lastly, Appellant argues that the count for burglary cannot stand because the evidence demonstrated that the Clubhouse was open to the public at the time of the attack. *Id*.

The trial court did not address these points in its Rule 1925(a) opinion because Appellant, in his Rule 1925(b) statement, combined his challenges to the weight and sufficiency of the evidence as single issues, neglecting to identify particular elements of the crimes that were asserted to be unproven. In similar circumstances, we have found waiver. *See Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015) (concluding that the appellant's sufficiency claim is waived when his statement "failed to specify the element or elements upon which the evidence was insufficient to support" the conviction); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Beyond these lapses, we note that on appeal, Appellant does not outline the elements of the challenged offenses, nor does he discuss any decisional case law supporting his newly-raised assertions. It is not the job of this Court to develop the arguments for him and "we will not act as his . . . appellate counsel." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa.Super. 2015). For the reasons stated above, this issue is waived.

Appellant next contends that all his verdicts were against the weight of the evidence. ***See*** Appellant's brief at 41-42. We readily dispose of this claim due to Appellant's failure to develop this argument in his brief. After reciting the applicable legal standard, he asserts in *toto*: "Here, [Appellant] argues that the evidence was against the weight of the evidence and therefore the [sentencing and amended sentencing order] should be reversed on appeal." Appellant's brief at 42. He provides no citation to the record or other legal authority beyond mere boilerplate law. Accordingly, this issue is waived. ***See*** ***Freeman***, 128 A.3d at 1249 ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119").

Appellant's subsequent two issues relate to his mistake of fact defense. More particularly, he avers that the court erred in granting the Commonwealth's motion *in limine* concerning evidence of Tonia Scott's purported ownership of the lands upon which Pine Ridge was established. ***See*** Appellant's brief at 24-30. Appellant also asserts that the court erred in denying his proposed "ignorance and mistake" jury instruction. ***Id***. at 30-32. Since both arguments contain substantial overlap, we address them together.

We review the admission or exclusion of evidence under the following standard:

> It is well settled that evidentiary rulings are within the sound discretion of trial courts. Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

***Commonwealth v. DiStefano***, 265 A.3d 290, 297 (Pa. 2021) (cleaned up). Similarly, "[o]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Yale***, 150 A.3d 979, 983 (Pa.Super. 2016) (citation omitted).

In addressing these issues, the trial court held the evidence concerning historical ownership of the land was irrelevant. Under Pennsylvania law, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible. ***See*** Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of, *inter alia*,

confusing the issues, misleading the jury, or causing undue delay. **See** Pa.R.E. 403.

The trial court's relevance conclusion relied upon the decision of this Court in **Commonwealth v. Dembrauskas**, 418 A.2d 493 (Pa.Super. 1980). **See** Trial Court Opinion, 8/11/23, at 5. In that case, the defendant was charged with several crimes when he forcibly took money from the victim at knifepoint upon belief that he was swindled during a card game. At trial, the defendant sought a jury instruction stating that he "could not be guilty of theft if he believed that he had a right to retake money taken from him by cheating in a game of cards." **Dembrauskas**, 418 A.2d at 496. The trial court denied the request and the defendant was convicted. On appeal to this Court, we affirmed, holding as follows:

> [T]he proper forum for resolving gambling disputes is a court of law pursuant to legal process. If one resorts to his own resources to take money physically from another in such instances, public policy precludes the assertion of a claim of right defense to a charge of theft by unlawful taking.

**Id**. at 497. We further eschewed the resort to vigilante justice by stating that "a claim of right defense is not available to one who employs force or stealth to recoup money lost in a gambling game or to collect an unliquidated debt." **Id**. at 496.

In the matter *sub judice*, the trial court extrapolated the holding in **Dembrauskas** to extend to real property, concluding that a rightful owner of land cannot use self-help or violence to reclaim possession. **See** Trial Court Opinion, 8/11/23, at 6. It stated:

- 12 -

[F]actual evidence on the ownership of land upon which Pine Ridge was created had no bearing upon the crimes alleged and Appellant's understanding of those fact[s] could not negate the intent required to establish any element of any charge against him. In other words, the ownership of the land upon which Pine Ridge is situate[d] is irrelevant because Appellant was not privileged to take the actions he was accused of taking even if he, himself, was the rightful owner of Pine Ridge.

*Id*. (unnecessary articles omitted) The court therefore maintained that it properly granted the Commonwealth's motion *in limine* as to the ownership of the lands and denied Appellant's mistake of fact instruction request.[5]

In response, Appellant claims that the intent element of his charges "could have been negated if the jury determined the mistake of fact was reasonable." Appellant's brief at 25. He avers that by failing to give him the requested jury instruction, the trial court decided the reasonableness of his mistaken belief instead of the jury, which is impermissible and inconsistent with the language of the instruction. *Id*. at 29. Appellant distinguishes **Dombrauskas** from the instant case, asserting that it stood for a limited proposition with respect to recovery of gambling debts, and not real property. *Id*. at 27-28. Instead, Appellant points us to two other decisions that he believes support his position that the evidence of ownership should have been

---

[5] Both the trial court and the Commonwealth also contend that Appellant's challenge to the denial of the request for an ignorance or mistake instruction is meritless since Appellant informed the court on the record that he did not believe a mistake of law instruction was appropriate in this case. **See** Trial Court Opinion, 8/11/23, at 12-13; Commonwealth's brief at 14-15. We reject this position because there is no authority that concession as to mistake of law would also preclude a request for a mistake of fact instruction.

admitted and that he was entitled to the jury instruction. *Id*. (citing *Commonwealth v. Scott*, 73 A.3d 599 (Pa.Super. 2013), and *Commonwealth v. Namack*, 663 A.2d 191 (Pa.Super. 1995)). As an alternative, he indicates that at the very least, his mistake of fact defense and request for the related jury instruction undoubtedly applied to the charge for criminal trespass, of which he was acquitted. *See* Appellant's brief at 30.

On review, we agree with the trial court that the evidence was irrelevant. Notably, Appellant does not discuss the elements of any of his convictions or explain **how** the *mens rea* of any given crime would have been negated with this information, even assuming that he reasonably believed that Tonia Scott owned the property in question. In the same vein, he proffers no explanation as to how this information would be "a fact of consequence" regarding his convictions for crimes like kidnapping, robbery, terroristic threats, carrying a firearm without a license, or simple assault. Pa.R.E. 401(b). Stated another way, Appellant has made no connection between the evidence of ownership of Pine Ridge and the elements of the crimes of which he was convicted, such as how Tonia Scott owning the land would permissibly allow him to kidnap or rob Derbyshire.[6] As iterated above, "[w]hile this Court may overlook minor

---

[6] To the extent Appellant more thoroughly develops the relevancy of this evidence to the crime of criminal trespass, we reiterate that Appellant was acquitted of that charge. *See Commonwealth v. Bond*, 190 A.3d 664, 667 (Pa.Super. 2018) ("To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." (citation omitted)).

defects or omissions in an appellant's brief, we will not act as his or her appellate counsel." **Freeman**, 128 A.3d at 1249.

Our conclusion applies equally to the court's decision not to instruct the jury about ignorance or mistake. Appellant's mistake of fact defense, even if believed by the jury to be reasonably held, simply did not afford him a legal defense since it did not negate any elements of the crimes. **See**, **e.g.**, **Commonwealth v. Sebolka**, 205 A.3d 329 (Pa.Super. 2019) (recounting that to establish a mistake of fact, there must be "facts which, if they did exist, would render an act innocent").

We are also unmoved by Appellant's reliance on **Scott**. There, this Court determined that the trial court erred in refusing to give a jury instruction when the mistake of fact related to the **identity** of the person shot by the defendant. The defendant fired a handgun toward someone he believed was an invader in self-defense during a shootout, but unintentionally struck a friend. **See Scott**, 73 A.3d at 601. At trial, the defendant asserted two separate defenses: (1) self-defense as to the attempted murder charges relating to the invader and (2) mistake of fact concerning the aggravated assault and REAP charges applicable to the friend. We concluded that "[b]ecause it is possible that the jury might have accepted [Scott]'s mistake-of-fact defense theory, thereby acquitting him of aggravated assault and REAP, we find that the omission prejudiced [Scott], requiring a new trial." **Id**. at 605. The holding was dependent upon the notion that the *mens rea* of "recklessness" in aggravated

assault and REAP could be completely negated when coupled with the corresponding self-defense theory.

That is not the case here, where, regardless of ownership of the property, Appellant was not entitled to kidnap, rob, assault, and possess a firearm, even if his mistake of fact defense was believed.[7]   Therefore, Appellant is not entitled to relief on these claims.

In his fifth claim, Appellant asserts that Derbyshire's bodycam footage should not have been entered into evidence since it constituted inadmissible hearsay and was not properly authenticated.  **See** Appellant's brief at 32-34. Our High Court has observed that "[t]o constitute hearsay, a statement first must be uttered out-of-court, and then it must be offered in court for the truth of the matter asserted in the statement." **Commonwealth v. Fitzpatrick**, 255 A.3d 452, 458 (Pa. 2021).   While hearsay is generally inadmissible, "[f]acially inadmissible hearsay still may be introduced as substantive evidence for the truth of the matter asserted if the statement falls under one of numerous exceptions to the general hearsay proscription." **Id**.   The exception relied upon by the Commonwealth at trial relates to present sense impressions and is found at Pa.R.E. 803(1), which provides thusly:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

---

[7] We likewise find Appellant's citation to **Namack** unavailing since that matter concerned whether the defendant believed he was entitled to travel on land when he had previously been given permission to do so.  This created an issue of fact as to whether Namack **intended** to trespass.  As indicated, Appellant here was acquitted of criminal trespass.

(1) **Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the event or condition.

Pa.R.E. 803(1).

Regarding authentication of evidence, we have noted that it entails a low burden of proof for admission: "The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient." *Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa.Super. 2022) (cleaned up).

Appellant states that the bodycam footage did not meet the present sense impression exception because it "did not describe an event or condition, but rather recorded an incident and contained statements made by numerous people, and did not identify the makers of all those statements." Appellant's brief at 33. He further avers that it was inadmissible because there was no testimony that the footage was a "fair and accurate representation of the scene it alleges to portray." *Id*. Appellant does not contest any particular statements or portions of the video, but rather the video in its entirety.

Without significant discussion, the trial court indicated that the recording was properly authenticated by Chief Bonito and that the present sense impression exception to hearsay applied. *See* Trial Court Opinion, 8/11/23, at 14. For its part, the Commonwealth highlights that in Derbyshire's testimony that was read into the record at trial, Derbyshire specifically stated

- 17 -

that he activated his bodycam right before the kidnapping. *See* Commonwealth's brief at 12. It argues that this testimony, coupled with Chief Bonito's attestation that he found the camera and downloaded the footage, was sufficient to authenticate the recording. *Id*.

We find that the court did not abuse its discretion in admitting this evidence. The trial testimony of Chief Bonito and the former testimony of Derbyshire read into the record clearly established knowledge of the matter and that the footage related to the incident in question. Further, since the recording contained statements made by Derbyshire and the assailants **while the incident was occurring**, any statement admitted for the truth of the matter asserted necessarily described events as the declarants were perceiving them. Appellant does not refer us to any statement made within the video that that fell outside the purview of Pa.R.E. 803(1), and thus we find no error.

Next, Appellant contends that the court erred in denying his motion for change of venue/venire. *See* Appellant's brief at 39-41. Our standard of review relating to the trial court's denial of a motion for a change of venue "is whether there has been an abuse of discretion on the part of the trial judge." ***Commonwealth v. Devries***, 112 A.3d 663, 666 (Pa.Super. 2015). It is axiomatic that "[v]enue or venire may be changed by th[e] court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A). Our High Court has stated that "the trial court is in the best position to assess

- 18 -

the atmosphere of the community and to judge the necessity of any requested change." ***Commonwealth v. Briggs***, 12 A.3d 291, 313 (Pa. 2011).

Further, in addressing this type of claim, this Court has observed the following:

> For pre-trial publicity to be presumptively prejudicial, a defendant must prove, *inter alia*, that the publicity was so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated. The publicity must be . . . inflammatory and slanted toward conviction rather than factual and objective. Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has sufficiently dissipated the prejudicial effects of the publicity.

***Commonwealth v. Tanner***, 205 A.3d 388, 393 (Pa.Super. 2019) (cleaned up).

As to this issue, Appellant advances the following argument, which is nearly identical to that made in his underlying motion for change of venue/venire:

> Here, the prior transcript from the first jury selection [in September 2021,] which was incorporated into the motion for change of venue/venire[,] provided that the potential jurors were questioned regarding pretrial publicity and formed an opinion of the defendants' guilt or innocence as a result of that publicity[.] . . . [Appellant] alleges that any new jurors would be subject to the same pretrial publicity [and] would be prejudiced in the same manner as the p[ro]spective jurors from the earlier term. Given the earlier panel, and extrapolating their answers, the trial court abused its discretion in denying same.

Appellant's brief at 41 (cleaned up). Accordingly, Appellant imputes bias to the jury based upon a panel that was dismissed approximately eighteen months earlier.

In rejecting this claim, the trial court recounted that at the hearing, Appellant offered only argument, no testimony or other evidence. **See** Trial Court Opinion, 8/11/23, at 7. It concluded that Appellant thus "failed to show that a fair and impartial jury could not be selected in Pike County." **Id**.

We determine that the court did not abuse its discretion in denying Appellant's motion. Appellant neglected to discuss how the transcript from prior selection supported a finding of "extensive, sustained, and pervasive" pre-trial publicity. **Tanner**, 205 A.3d at 393. He provides no indication as to what percentage of venirepersons were purportedly unable to put aside the information they learned and decide the case fairly. Moreover, assuming that there was pre-trial publicity that was presumptively prejudicial, Appellant does not argue that this notoriety did not dissipate in the three years between the time of the incident and commencement of trial, or the year and one-half between the first jury selection and the latter. **See**, **e.g.**, **Commonwealth v. Walter**, 119 A.3d 255, 281 (Pa. 2015) (finding that "the [eleven]–month period between the latest of the submitted publicity and [a]ppellant's trial was sufficient to dispel any prejudice against her").

Appellant's remaining issues relate to his sentence, as well as the denial of his motion for reconsideration of the sentence. This Court has recounted as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa.Super. 2022) (citation omitted).

To the extent that Appellant's claims concern the discretionary aspects of his sentence, we note that it is well-settled that there is no absolute right to review of such challenges by this Court:

> [A]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Solomon*, 247 A.3d 1163, 1167 (Pa.Super. 2021) (*en banc*) (cleaned up). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clary*, 226 A.3d 571, 580 (Pa.Super. 2020) (citation omitted).

In three of the claims, Appellant asserts that the court (1) imposed an unduly harsh sentence, (2) erred in applying the deadly weapon enhancement to his sentences, and (3) failed to calculate his PRS correctly. *See* Appellant's brief at 34-38. Each of these claims presents a challenge to the discretionary aspects of Appellant's sentence. *See Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (analyzing an argument that a sentence was "excessive" and "unduly harsh" in the context of a sentence's discretionary aspects); *Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa.Super. 2016) (noting the "application of the deadly weapon enhancement implicates the discretionary aspects of sentencing"); *Commonwealth v. Spenny*, 128 A.3d 234, 241 (Pa.Super. 2015) (stating that an assailment upon the court's calculation of a PRS concerns the discretionary aspects of sentencing).

Appellant timely appealed and preserved these issues in his motion for reconsideration of his sentence. However, we find that Appellant has not presented a substantial question with respect to his excessiveness claim. In his brief, he cites case law stating that "imposition of consecutive, rather than concurrent, sentences may raise a substantial question where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Id*. (citing *Commonwealth v. Moury*, 992 A.2d 162 (Pa.Super. 2010)). Other than claiming that his sentence is "unduly harsh" based on its length, he does not discuss the number or severity of the crimes for which he was convicted.

Appellant's bald assertion of harshness arising from the imposition of consecutive sentences does not raise a substantial question here. His citation to *Moury* does not aid him, since that case considered different circumstances, wherein the defendant challenged the length of his sentence because, *inter alia*, he believed he was punished for going to trial and because a co-defendant who pled guilty received a different sentence. *See Moury*, 992 A.2d at 172-75. Unlike in *Moury*, Appellant has not articulated that the length of his sentence was in contravention to a specific provision of the Sentencing Code or otherwise "contrary to the fundamental norms which underlie the sentencing process." *Clary*, 226 A.3d at 580. On the contrary, in light of the extremely serious nature of the offenses, Appellant's concerted action with other violent individuals, and the numerous distinct convictions involving a multitude of separate acts, we are not persuaded that the sentence is "unduly harsh" so as to raise a substantial question. Accordingly, he has failed to invoke our jurisdiction as to this claim.[8]

Turning to Appellant's attacks on the court's improper application of the deadly weapon enhancement and erroneous calculation of his PRS, we find that he has presented us with a substantial question as to each, and thus we will address them. *See* Appellant's brief at 22. Concerning the application of

_____

[8] In the same vein, we reject Appellant's challenge to the denial of his motion for reconsideration of his sentence on this basis. *See* Appellant's brief at 38. Therein, he merely reiterates that based upon his "unduly harsh" consecutive sentences, the court erred in denying the motion. *Id*. For the reasons discussed above, the court was within its discretion to deny Appellant's reconsideration motion.

- 23 -

the deadly weapon enhancement, we note that "when the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the [deadly weapon enhancement used] Matrix (§ 303.17(b))." 204 Pa. Code § 303.10(a)(2). A deadly weapon includes any firearm, whether loaded or unloaded, and "use" is determined if the actor "threatened or injured another individual" with the deadly weapon. *See* 204 Pa. Code § 303.10(a)(2)(i).

After citing general law discussing the deadly weapon enhancement, Appellant summarily argues that his conviction for robbery of a motor vehicle "should not have had the [d]eadly [w]eapon [e]nhancement applied at all." Appellant's brief at 35. He does not explain **why** the enhancement should not apply to this charge. Similarly, he cites no portion of the factual record supporting a conclusion that the enhancement would not apply to this charge.

The trial court responded by recounting the evidence presented at trial, noting that Appellant's crimes "were committed brazenly with large degrees of intimidation and force. The crimes were carried out with a firearm or firearms resulting in deadly weapon enhancements being applied to a multitude of offenses. The video of these crimes bear witness to the brutality of the crimes." Trial Court Opinion, 8/11/23, at 10 (citing N.T. Sentencing, 3/31/23, at 10-11).

Appellant has not satisfied us that the court abused its discretion in applying the deadly weapon enhancement to the crime of robbery of a motor vehicle. Our review of the record confirms the trial court's conclusion that

Appellant, along with the other assailants, deployed firearms in not only subduing Derbyshire, but robbing him of the keys to his personal vehicle and one of the vehicles used by the Pine Ridge Public Safety Office. Video evidence showed that the firearms were not merely possessed on the person of the Assailants but were brandished when restraining Derbyshire and taking his belongings. Appellant's own testimony bore out that, at several times during the encounter, he had his firearm in his hand.

Regarding Appellant's issue relating to calculation of his PRS, we note that the score is "based on the number and type of prior convictions the defendant has on his or her criminal record." *Spenny*, 128 A.3d at 242. Additionally, "[a] prior conviction from another state court, federal court, or foreign jurisdiction is scored as a conviction for the current equivalent Pennsylvania offense." *Id*. (citing 204 Pa. Code § 303.8(f)(1)).

In his brief, following citation to the relevant general legal principles, Appellant again offers a highly condensed argument as follows:

> Here, . . . the undersigned raised the issue of [Appellant]'s 1988 charge in California, and that [Appellant] believed same to be expunged. If [he] is correct, as the undersigned was unable to retrieve any documents from the clerk in California, [Appellant] would argue [that] the matter should not count toward his [PRS].

Appellant's brief at 36-37. In short, Appellant offers nothing more than his **belief** that the California conviction was expunged. Notably, he does not claim that the battery conviction is not equivalent to Pennsylvania's aggravated assault statute.

We conclude that the trial court did not err in considering the 1988 conviction while calculating Appellant's PRS. As the court noted, and as iterated above, probation officer Andrew King testified that he was provided information concerning the conviction pursuant to a routinely conducted background check of Appellant. There was no indication that it had been expunged. Further, since Appellant has waived any argument that the conviction did not equate to aggravated assault, we need not compare the elements of the two offenses.

Based on the above, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/12/2024