J-S43041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                   :                PENNSYLVANIA
                                   :
             v.                        :
                                   :
JOSEPH SCHELL                    :
                                 :
           Appellant        :    No. 2165 EDA 2023

Appeal from the Judgment of Sentence Entered April 6, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002290-2021

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED FEBRUARY 18, 2025**

Joseph Schell appeals from the judgment of sentence entered after the trial court found him guilty of several offenses involving H.W., the 16-year-old daughter of his paramour, E.W. He claims that the court's verdict was against the weight of the evidence and challenges the legality and discretionary aspects of his sentence. Upon review, we strike the parole conditions of his sentence and affirm in all other respects.

Briefly, this case arises from the following facts. In March of 2021, Detective Sargeant Steven Benson received a report from Chester County Children, Youth and Family of suspected child abuse and neglect. He began an investigation.

At that time, Schell and E.W. were staying at a hotel in Uwchlan Township along with their two minor children and H.W. On March 19, 2021, police were dispatched to the hotel because Schell overdosed and was being

violent and destructive. As a result, all three children were removed and placed with H.W.'s 19-year-old sister.

The sister reported that H.W. had been sexually exploited by Schell. In 2020, while Schell and E.W. resided at a hotel in Uwchlan Township and other hotels in Chester and Montgomery counties, Schell and E.W. engaged in sexual intercourse and used drugs in the children's presence. Additionally, Schell had been driving H.W. to work at a nearby grocery store. When he did, Schell played pornography on his phone and linked the audio through blue tooth to the car's speakers. H.W. sat in the passenger seat next to Schell, just inches away, and could see what he was playing on his phone. On numerous occasions, during these trips, Schell took his penis out and masturbated in front of H.W. Additionally, Schell did drugs while he drove H.W. to work and on other occasions when he was around H.W.

Schell and E.W. were arrested and charged with multiple offenses.

On January 12, 2023, after a bench trial, the court found Schell guilty of endangering the welfare of children ("EWOC"), corruption of minors, and indecent exposure.[1] On April 6, 2023, the trial court sentenced Schell to twenty-seven (27) months to five (5) years' incarceration and two (2) years' consecutive probation. Schell filed a post-sentence motion, which the court denied.

_____

[1] 18 Pa.C.S.A. 4304(a)(1), 6301(a)(1)(ii), and 3127(a).

- 2 -

Schell filed this timely appeal. He and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Schell raises the following three issues for our review which we have reordered for ease of deposition:

I. Were [Schell's] convictions for [EWOC], corruption of minors, and indecent exposure against the weight of the evidence presented?

II. Did the trial court err in ordering [Schell] to have: "no contact with victim" and "no unsupervised contact with minors"?

III. Did the [trial] court err in using the wrong prior record score ["PRS"] in calculating the sentencing guidelines?

Schell's Brief at 4.

In his first issue, Schell claims that the trial court abused its discretion in determining that the verdict was not against the weight of the evidence. In support of his claim, Schell argues that H.W's testimony was not credible: 1) H.W.'s testimony was inconsistent with what she previously told the forensic interviewer and detective regarding where and when these incidents occurred, *i.e.*, whether they were on the way to work or at a hotel, and whether she was 15 or 16 at the time; 2) H.W.'s mother testified that Schell drove her and H.W. to work at Giant together, which conflicted with H.W.'s story that she was alone with Schell when these incidents occurred; 3) Schell could not engage in this conduct while he was driving a short distance on a busy road and not be noticed; and 4) there was no forensic or physical evidence to support H.W.'s testimony such as pornography from Schell's phone, sex toys

or paraphernalia or photographs thereof. Schell's Brief at 26-28. According to Schell, these discrepancies and conflicting testimony, given the lack of physical evidence, were of greater weight; to ignore them or give them equal weight, would be to deny justice. Therefore, he claims that the trial court palpably abused its discretion. *Id.* at 28.

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. ***Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion***.
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added). Absent an abuse of discretion, the trial court's decision will not be disturbed. ***See Commonwealth v. Griffin***, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in

- 4 -

judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007). By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.*** "The trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–880 (Pa. 2008).

Initially, we observe that, typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses, "will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action." ***Criswell v. King***, 834 A.2d 505, 512 (Pa. 2003). Here, however, a non-jury trial was held. Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience. Notwithstanding this, we consider whether the trial court abused its discretion in deciding Schell's weight claim.

Not surprisingly, the trial court concluded that its decision did not shock its conscience and therefore was not against the weight of the evidence. The trial court, as the finder of fact, found the Commonwealth's witnesses credible and did not believe Schell's version of events. In reaching its decision, the

- 5 -

trial court considered the testimony presented at trial.  The court noted that it had observed the demeanor of the Commonwealth's witnesses, and that they corroborated each other's testimony.  It found H.W.'s testimony to be credible, even though Schell tried to demonstrate that she was not telling the truth.  The court further noted that the trial was very difficult for H.W., because she cared for Schell, but it found that her testimony was convincing and was corroborated by the other witnesses.  Trial Court Order, 7/25/23, at 4.

Based upon our review of the record, and the trial court's rationale, we conclude that the trial court did not abuse its discretion in determining that its verdict was not against the weight of the evidence.  Schell essentially asks this Court to reweigh the evidence presented at trial and reassess the credibility of the witnesses.  This we cannot do.  "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness.  An appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Champney*, 832 A.2d 403, 408 (2003) (citations omitted).  Schell's weight claim fails.

Schell next claims that part of his sentence is illegal.  Specifically, Schell argues that the trial court erred by imposing parole conditions upon him without authority to do so.  According to Schell, because his maximum sentence exceeded two years, the Pennsylvania Board of Probation and Parole has exclusive authority to determine parole conditions.  Therefore, Schell

maintains, the trial court's "no contact" order with respect to the victim and "no unsupervised contact" with other children must be vacated. Schell's Brief at 24.

The scope and standard of review we apply to determine the legality of a sentence are well established. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Commonwealth v. Leverette*, 911 A.2d 998, 1001 (Pa. Super. 2006). "An illegal sentence must be vacated." *Id.* Further, "[a] challenge to the legality of a sentence may be raised as a matter of right, is not subject to waiver, and may be entertained as long as the reviewing court has jurisdiction." *Commonwealth v. Borovichka*, 18 A.3d 1242, 1254 n.8 (Pa. Super. 2011).

"[W]here the maximum term of a defendant's sentence is two or more years, a trial court is without authority to set the terms of any parole." *Commonwealth v. Alexander*, 16 A.3d 1152, 1156 (Pa. Super. 2011) (*en banc*) (vacating portion of sentence that imposed parole condition where defendant's maximum sentence was two years' imprisonment). The trial court may however make recommendations to the board, which shall be considered advisory only and not binding on the board. 61 Pa.C.S.A. § 6134(b).

Here, Schell's incarceration of sentence of 27 months to 5 years was a state sentence. As the Commonwealth and trial court concede, the trial court lacked authority to impose any parole conditions on Schell; those conditions are within the exclusive jurisdiction of the Board of Probation and Parole. ***See***

Commonwealth's Brief at 21; Trial Court Opinion, 6/20/24, at 4. Therefore, we strike the "no contact" parole conditions from Schell's sentence.

In his third issue, Schell claims that the trial court erred when it utilized the incorrect prior record score to calculate the applicable sentencing guidelines for his convictions. Schell's Brief at 15. A challenge to a prior record score calculation implicates the discretionary aspects of sentencing.[2] *See Commonwealth v. Sanchez*, 848 A.2d 977, 986 (Pa. Super. 2004) (holding that a miscalculation of the PRS "constitutes a challenge to the discretionary aspects of [a] sentence" as a misapplication of the sentencing guidelines). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

_____

[2] Contrary to Schell's claim, a PRS challenge does not implicate the legality of a sentence. *See* Schell's Brief at 19.

***Commonwealth v. Colon***, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013)). Schell has satisfied the first three requirements under ***Colon***.[3]  Accordingly, we must determine whether Schell has raised a substantial question.

In his Rule 2119(f) statement, Schell claims that the trial court abused its discretion when it imposed his sentence based upon a PRS of 5 instead of 4.  Schell's Brief at 13.  This Court has held that a claim that a trial court miscalculated the appellant's PRS raises a substantial question for our review. ***Commonwealth v. Spenny***, 128 A.3d 234, 242 (Pa. Super. 2015).  Because Schell has raised a substantial question, we will consider the merits of his sentencing claim.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

_____

[3] Although Schell agreed to his PRS at the sentencing hearing as discussed *infra*, he challenged it in his post-sentence motion and therefore preserved it. A defendant wishing to challenge the discretionary aspects of a sentence must raise this claim at sentencing or in a post-sentence motion.  ***Moury***, 992 A.2d at 170.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Where there is an abuse of discretion, the sentence must be vacated. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007).

Here, Schell claims that his PRS was 4, rather than 5. Specifically, he argues that he had prior juvenile adjudications that lapsed, which should not have been counted towards his PRS. According to Schell, his juvenile adjudications were all disposed of on February 27, 1996; he turned 18 on September 26, 1996; he only had summary convictions in the 10 years thereafter; and his first adult misdemeanor convictions (two M-1 offenses) occurred on November 19, 2008, when he was 30 years old. Consequently, Schell maintains that he meets all the criteria set forth in section 303.6 of the sentencing guidelines for lapsing, and, therefore, his sentence must be vacated. Schell's Brief at 15. Notably, neither the Commonwealth nor the trial court address the specifics of this claim.

The Commonwealth maintains that, at sentencing, the parties agreed that Schell's prior record score was 5, and therefore the court used it. It argues that Schell failed to prove to the court that the PRS was inaccurately calculated. The Commonwealth further maintains that, even if Schell's PRS should have been 4, the trial court correctly sentenced Schell based on multiple factors. Commonwealth's Brief at 7, 17-18.

Similarly, the trial court explained that the parties agreed to a PRS of 5 at sentencing. It further maintains that, even if Schell's PRS was 4, the court would have imposed the same sentence, which was appropriate given the

circumstances of this case. Therefore, its sentence should stand. **See** Trial Court Order, 7/25/23, at 3.

To determine the applicable sentencing guidelines for a criminal conviction, the trial court must establish a defendant's PRS. 204 Pa.Code § 303.2(a)(2). The PRS "is based on the type and number of prior convictions (§ 303.5) and prior juvenile adjudications (§ 303.6)." 204 Pa.Code § 303.4(a). However, in certain circumstances, juvenile adjudications are excluded from the PRS calculation. Section 303.6 of the sentencing guidelines provides the following regarding juvenile adjudications and their effect on the PRS:

> (a) Juvenile adjudication criteria. Prior juvenile adjudications are counted in the Prior Record Score when the following criteria are met:
>
> > (1) The juvenile offense occurred on or after the offender's 14th birthday, and
> >
> > (2) There was an express finding by the juvenile court that the adjudication was for a felony or one of the offenses listed in § 303.7(a)(4).
>
> (b) Only the most serious juvenile adjudication of each prior disposition is counted in the Prior Record Score. No other prior juvenile adjudication shall be counted in the Prior Record Score.
>
> (c) Lapsing of juvenile adjudications. Prior juvenile adjudications for four-point offenses listed in § 303.7(a)(1) shall always be included in the Prior Record Score, provided the criteria in subsection (a) above are met:
>
> > (1) All other juvenile adjudications not identified above in subsection (a) lapse and shall not be counted in the Prior Record Score if-
> >
> > > (i) The offender was 28 years of age or older at the time the current offense was committed; and

- 11 -

> (ii) The offender remained crime-free during the ten-year period immediately preceding the offender's 28th birthday.
>
> (iii) Crime-free. Included in the definition of crime- free is any summary offense and/or one misdemeanor offense with a statutory maximum of one year or less.
>
> (2) Nothing in this section shall prevent the court from considering lapsed prior adjudications at the time of sentencing.

204 Pa.Code § 303.6 (emphasis added).

To assist the court with sentencing, the county probation department prepares a sentence guideline form, which is divided into three sections: A, B, and C. A defendant's prior record score is calculated by adding the three sections together. Schell's form indicated the following: 0 points in section A; 3 points for burglary in section B; and 2 points for two F3 juvenile adjudications and 2 points for six misdemeanors (4 points total) in section C. Adding the points from each section together gave Schell a total of 7 points. However, the maximum prior record score (if a defendant is not RFEL or REVOC based on the points in sections A and B) is 5. Therefore, based on this form, the court used a prior record score of 5 for Schell.

According to Schell, the 2 points in section C for his F3 juvenile adjudications should not have been included in calculating his PRS. He claims that he satisfied all the criteria set forth in section 303.6(c)(1), and therefore, these offenses lapsed. However, regardless of whether Schell's juvenile adjudications lapsed, he would still have a PRS of 5. Deducting 2 points from section C would give him a total of 5 points, *i.e.*, 3 points in section B for the

burglary and 2 points in section C for the misdemeanors. Therefore, Schell's PRS would still be 5.

We observe that, in arguing that the lapsed adjudications would result in a PRS of 4, Schell incorrectly presumed that only 2 points were assigned to the burglary in section B. *See* Schell's Brief at 18. This was factually incorrect; the form clearly indicates that 3 points were assigned for the burglary.[4] We note that, other than stating the burglary was 2 points, Schell makes no argument why it should have been 2 points instead of 3. Consequently, Schell's PRS was correctly calculated as 5. We conclude that the trial court did not abuse its discretion in utilizing a PRS of 5 in determining the applicable sentencing guidelines. The issue of whether the juvenile adjudications lapsed is moot because the PRS was 5 with or without them. Schell is not entitled to relief on this issue.

Parole conditions stricken. Judgment of sentence affirmed in all other respects.

_____

[4] This error may have arisen from a discrepancy between the information contained in the PSI and Schell's criminal record. Taking judicial notice of Schell's conviction for burglary on his criminal record, we observe that the conviction is designated as an F1, and not an F2 as indicated in his PSI. Because the burglary was an F1, the sentencing guidelines assign 3 points to this offense, whereas the guidelines assign 2 points for an F2 burglary.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/18/2025</u>