**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN ROBERT CURTIS | : | |
| | : | |
| Appellant | : | No. 408 MDA 2025 |

Appeal from the Judgment of Sentence Entered November 4, 2011
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003035-2011

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 15, 2026**

Appellant, John Robert Curtis, appeals from the judgment of sentence entered on November 4, 2011, as made final by the denial of *his nunc pro tunc* post-sentence motion on February 26, 2025, following his open guilty pleas to retail theft and conspiracy.[1]  Upon review, we affirm.

We previously summarized the facts and procedural history of this case as follows:

> In August 2011, [Appellant], along with two co-defendants, was arrested for stealing multiple video games from a Walmart in Berks County.  On September 28, 2011, [Appellant] entered an open guilty plea to retail theft and conspiracy to commit retail theft.
>
> On November 4, 2011, the trial court held [Appellant's] sentencing hearing [wherein the Commonwealth presented the testimony of a loss expert from Walmart].  The court determined that the total restitution amounted to $3,777.36.   As a result of this finding,

---

[1] 18 Pa.C.S.A. §§ 3929(a)(1) and 903(a)(1).

the offense gravity score for both offenses was graded as a 5. Based on this and [Appellant's] prior record score of 3, the applicable sentencing guidelines recommended a standard range sentence of 6 to 16 months [of] incarceration for each offense. The trial court sentenced [Appellant] to an aggregate sentence of 28 months to 14 years' incarceration: 16 months to 7 years' incarceration for retail theft; and a consecutive sentence of 12 months to 7 years' incarceration for conspiracy. Additionally, the court ordered that [Appellant] was prohibited from being on any property owned or operated by Walmart, and that he pay restitution in the amount of $3,777.36 and a fine of $500.00.

Following imposition of sentence, [Appellant] was informed of his post-sentence rights. Counsel discussed with [Appellant] at that time whether he wanted to file a post-sentence motion, but he indicated that he did not, stating "no, no, no, I just want it to be done. It's fine. I just want it to be done."

[Appellant] changed his mind three days later, and, on November 7, 2011, he filled out a "Request for Information/Assistance" form at the jail, indicating his desire to appeal. On November 14, 2011, [Appellant] sent this form to the public defender's office.

On November 16, 2011—two days after the 10-day deadline for filing a post-sentence motion, [Appellant's] counsel filed a motion for leave to file a post-sentence motion *nunc pro tunc*. Therein, counsel indicated that she did not learn of [Appellant's] letter to the public defender's office until November 15, 2011, shortly after she returned from vacation. On November 18, 2011, the trial court denied [Appellant's] motion as untimely and therefore did not consider the merits of it. Counsel took no further action because [Appellant's] only issue related to the discretionary aspects of sentencing, which had not been preserved.

On October 22, 2012, [Appellant] filed a timely *pro se* [petition pursuant to the] Post Conviction Relief Act[, (PCRA), 42 Pa.C.S.A. §§ 9541-9546]. Less than one week later, the court received a letter from the Pennsylvania Board of Probation and Parole indicating that [Appellant] was being considered for parole. [Appellant] was released on state parole, and the court received no further communication from him. The court did not address [Appellant's] PCRA petition.

Eight years later, in October 2020, the court discovered that [Appellant] was reincarcerated for allegedly violating the terms and conditions of his parole in this case. The court appointed

> PCRA counsel who filed an amended PCRA petition principally claiming that plea counsel was ineffective for failing to [seek reinstatement of Appellant's post-sentence rights and in failing to] file an appeal. After a hearing, the PCRA court denied [Appellant's] petition on December 14, 2021.
>
> [Appellant] timely appealed the denial of his request for PCRA relief to this Court.

**Commonwealth v. Curtis**, 321 A.3d 925, at *1-2 (Pa. Super. 2024) (non-precedential decision). In a decision filed on May 3, 2024, a prior panel of this Court granted collateral relief and "reverse[d] the trial court's order denying [Appellant's] motion for leave to file a post-sentence motion *nunc pro tunc*" and remanded the case to the trial court to "permit [Appellant] to file his post-sentence motion, *nunc pro tunc*, and consider the merits of it." **Id.** at *3.

On January 16, 2025, Appellant filed a *nunc pro tunc* post-sentence motion challenging the weight of the evidence presented and the discretionary aspects of sentencing as excessive.[2] On February 4, 2025, Appellant requested the transcripts from his original sentencing hearing on November 4, 2011. Two days later, those transcripts were filed and made a part of the certified record. Thereafter, the Commonwealth responded to Appellant's *nunc pro tunc* post-sentence motion on February 7, 2025. On February 26,

---

[2] Appellant has been represented by counsel from the time of our most recent remand through this appeal.

2025, the trial court entered an order denying post-sentence relief. This timely appeal resulted.[3]

On appeal, Appellant presents the following issue[4] for our review:

_____

[3] Appellant filed a timely notice of appeal on March 25, 2025. However, counsel for Appellant inadvertently named another person in the caption of the notice of appeal. Accordingly, this Court entered an order directing Appellant to show cause why the appeal should not be quashed as the caption named someone who was not an aggrieved party. Counsel filed a response and amended notice of appeal, and we discharged the rule to show cause by order entered on July 3, 2025.

After the filing of the notice of appeal, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on April 9, 2025. On April 29, 2025, Appellant complied timely. In his Rule 1925(b) statement, however, Appellant challenged only the trial court's sentencing discretion. On May 9, 2025, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). The trial court noted that "[t]his case was initially assigned to Senior Judge John A. Boccabella who served as the sentencing judge in the underlying criminal matter" but that Judge Boccabella had mandatorily retired and the case was reassigned to Judge Patrick T. Barrett, who ruled on the *nunc pro tunc* post-sentence motion and ultimately authored the Rule 1925(a) opinion. **See** Trial Court Opinion, 5/9/2025, at 1, n.1.

[4] As mentioned, despite challenging the weight of the evidence in his January 2025 post-sentence motion, Appellant did not raise that issue in his court-ordered Rule 1925(b) statement and he does not raise that claim currently in his appellate brief. As such, Appellant has abandoned his weight claim, we find it waived, and we need not address it. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement …are waived."); **see also Commonwealth v. Woodard**, 129 A.3d 480, 509 (Pa. 2015) (failure to present any appellate argument in support of an issue results in waiver); **see Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fail[s] to develop [the claim in] any other meaningful fashion capable of review, that claim is waived."); **see also Commonwealth v. Heggins**, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived).

A. Whether the trial court erred in denying [Appellant's] post-sentence motion challenging his sentence where the trial court abused its discretion at sentencing by:

    a. using an incorrect offense gravity score (OGS) and employing one higher than the OGS used for his co-defendant, resulting in a significantly lighter sentence for the more culpable co-defendant;

    b. failing to consider the lack of a need to protect the public from [Appellant], the non-violent nature of the offense, and/or [Appellant's] rehabilitative needs when sentencing; and,

    c. imposing consecutive sentences without meaningful justification for so doing?

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant challenges the discretionary aspects of his sentence, arguing that the trial court erred by: (1) using an incorrect offense gravity score; (2) failing to consider the non-violent nature of the offense and/or his rehabilitative needs; and (3) imposing consecutive sentences for his two convictions.

We have stated:

With respect to our standard of review, [in cases challenging the discretionary aspects of sentencing[,] we have held that sentencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion. Moreover, pursuant to statute, [an a]ppellant does not have an automatic right to appeal the discretionary aspects of his sentence. **See** 42 Pa.C.S.A. § 9781(b). Instead, [an a]ppellant must petition this Court for permission to appeal the discretionary aspects of his sentence.

As this Court has explained:

[t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708(E)]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Cook**, 941 A.2d 7, 11 (Pa. Super. 2007).

**Commonwealth v. Laughman**, 314 A.3d 569, 571 (Pa. Super. 2024).

Here, Appellant filed a timely notice of appeal and preserved the discretionary aspects of sentencing claim in his *nunc pro tunc* post-sentence motion. Further, he has filed a statement pursuant to Rule 2119(f) within his appellate brief as required, which the Commonwealth concedes. **See** Appellant's Brief at 9-12; **see also Commonwealth's Brief** at 6, n.1. ("The Commonwealth notes that [Appellant] has complied with the mandates of Pa.R.A.P. 2119(f), in requesting permission to appeal the discretionary aspects of sentencing."). We also find that Appellant has satisfied the fourth requirement, as an allegation that the trial court inappropriately calculated the offense gravity score raises a substantial question:

An improper calculation of the offense gravity score affects the outcome of the sentencing recommendations, resulting in an improper recommendation, thereby compromising the fundamental norms which underlie the sentencing process. We thus hold that any misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of sentence. A claim that the sentencing court misapplied the Guidelines presents a substantial question.

*Commonwealth v. Sunealitis*, 153 A.3d 414, 421 (Pa. Super. 2016) (citation omitted). Therefore, we may address Appellant's discretionary aspects of sentencing claim.

Appellant challenges three aspects of sentencing in this matter. First, Appellant argues that the trial court erred in sentencing by using a higher offense gravity score based upon the estimated value of the items stolen. Appellant's Brief at 14. Appellant claims that the Commonwealth did not present evidence of the exact value and quantity of the stolen items. *Id.* Instead, Appellant notes that "the sentencing court used the valuation of $3,777.36 which resulted in an OGS of 5[.]" *Id.* at 17. Appellant insists that the trial court should have used an OGS of 3, which, according to statute, corresponded to stolen items valued at less than $1,800.00. *Id.* More specifically, Appellant posits:

> During the valuation and sentencing hearing held by the lower court, testimony was taken from the asset protection representative of the retail establishment where Appellant [] and his co-defendant committed the offenses on January 6, 2011. That testimony established that the store set about to determine the number and value of the items missing the day after the theft occurred. Asset protection roughly calculated how many items, in this instance, video games, were taken by Appellant [] and his co-defendant by first estimating how many video games could be picked up in hand at one time. The store's inventory control system was then consulted to determine how many video games were unaccounted for. A spreadsheet of the purported missing inventory, prepared for the hearing and admitted as Commonwealth Exhibit 2, indicated a total of 66 missing video games. Upon cross-examination, the asset protection agent testified that he did not know when the inventory report had last been run before being used to calculate the missing video games. The agent likewise confirmed that retail theft is a common daily

- 7 -

occurrence at the store. These admissions resulted in uncertainty in the count of missing inventory.

In contrast to the estimated 66 missing items, co-defendant Jason Bender provided a statement, admitted at Commonwealth Exhibit 3, in which he estimated that the men stole between 25-30 video games. Appellant [] likewise testified that he believed that they took approximately 20-25 games. The [Commonwealth] admitted that [such estimates were], in fact, reasonable. Even assuming that Appellant [] and his co-defendant stole a total of 30 video games, and calculat[ing the] total value of the missing games based upon the most expensive price ($60[.00]) of all the missing games, this provides a valuation of $1,800.00. Despite this evidence, the sentencing court used the valuation of $3,777.36 which resulted in an OGS score of 5, rather than an OGS score of 3 supported by the evidence-based valuation of $1,800.00. Based upon the evidence presented by the Commonwealth it was abject speculation for the court to conclude the Commonwealth had proven [] that merchandise with a value in excess of $2,000.00 had been removed from the store by Appellant[. T]hat speculative inflated value should not have been used to increase his OGS and, as a result, his sentence.

The patent unfairness of Appellant[‘s] sentence is emphasized when considered that his more culpable co-defendant received a substantially lighter sentence by way of application of a[n] OGS of 3. …The inconsistency between the sentences completely ignores the guidelines. The evidence presented at the valuation and sentencing hearing confirmed that Appellant [] was not the primary actor, he was the minion. Regardless of having participated in the exact same criminal offense, there was no equity between the sentences Appellant [] and his co-defendant received.

Appellant's Brief at 16-18 (quotations and internal citations omitted).

We have stated:

The standard of appellate review of discretionary aspects of sentencing is an abuse of discretion. Discretion is abused when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. The improper utilization of the Sentencing Guidelines is an

- 8 -

error of law, which is a legal question, but does not render the sentence illegal.

***Commonwealth v. Archer***, 722 A.2d 203, 211 (Pa. Super. 1998). Furthermore, "[t]he calculation of the offense gravity score is a matter of statutory interpretation, which raises a question of law." ***Commonwealth v. Troell***, 290 A.3d 296, 299 (Pa. Super. 2023) (internal citation omitted). "This Court reviews questions of law under a *de novo* standard of review." ***See id.*** However, "[b]ecause this legal conclusion is premised upon the presentation of testimony and the sentencing court's credibility determinations, it presents a mixed question of fact and law. In such circumstances, [an appellate court] defer[s] to the findings of fact made by the sentencing court as long as they are supported by competent evidence, but give[s] no deference to that court's legal conclusions." ***Commonwealth v. Batts***, 163 A.3d 410, 435–436 (Pa. 2017) (citations omitted).

This Court has stated that

the purpose of the prior record score and the offense gravity score are part of the Guidelines used by the court to create uniformity in sentencing. This Court has further stated that, if a sentencing court considers improper factors in imposing sentence upon a defendant, the court thereby abuses its discretion, but the sentence imposed is not rendered illegal. Otherwise, every erroneous consideration by a sentencing court will render the sentence illegal in a manner which cannot be waived by a defendant. If we were to qualify an improper calculation of offense gravity score as implicating the legality of sentence, we would be giving the sentencing guidelines more weight than they were intended. We recently stated, the guidelines list ranges within which a court may sentence for particular crimes; they are not mandatory and courts will take into account various other factors when sentencing.

> Although a sentencing court has no obligation to sentence within the guidelines, the trial court must necessarily correctly apply the guidelines and reach the correct point of departure before sentencing outside of the guidelines. As applied here, the sentencing court must correctly ascertain the offense gravity score in order to reach the proper sentence recommendation provided by the Sentencing Guidelines. *Cf. Commonwealth v. Jones*, 640 A.2d 914, 919 (Pa. Super. 1994) (holding that the application of the deadly weapons' enhancement is mandatory to the extent of establishing a correct point of departure for sentencing, but upon appellate review is treated as a substantial question regarding the discretionary aspects of sentencing); and *Commonwealth v. Krum*, 533 A.2d 134, 135 (Pa. Super. 1987) (*en banc*) (holding that the question of whether a juvenile record should be included in a prior record score implicates the discretionary aspects of sentencing).

*Commonwealth v. Archer*, 722 A.2d 203, 210 (Pa. Super. 1998).

"When a court sentences a criminal defendant convicted of a felony and/or misdemeanor, the Guidelines require calculation of both the defendant's offense gravity score and prior record score to arrive at a recommended sentencing range." *Commonwealth v. Spenny*, 128 A.3d 234, 242 (Pa. Super. 2015) (citation omitted). The Pennsylvania Sentencing Guidelines assign every crime an offense gravity score. 204 Pa.Code § 303.3(a). Theft offenses are categorized based upon the value of the property involved in the offense. *See* 204 Pa.Code § 303.15. Theft by unlawful taking-moveable property (no threat), a crime under 42 Pa.C.S.A. § 3921(a), receives an offense gravity score of "5" when the amount taken is $2,000.00 to $25,000.00. *Id.* Theft by unlawful taking-moveable property (no threat), a crime under 42 Pa.C.S.A. § 3921(a), receives an offense gravity score of "3" when the amount taken is $200.00 to $2,000.00. *Id.* The amount

involved in a theft is defined as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." 18 Pa.C.S.A. § 3903(c)(1).

Regarding co-conspirators, we noted in **Archer**, **supra** that the jury found Archer guilty of, *inter alia*, robbery and conspiracy, but found him not guilty of murder. On appeal to this Court, Archer asserted that "because he was acquitted of murder, the gunshot that killed the [victim could] not be considered," and argued that, as a result, the trial court applied an incorrect offense gravity score when it sentenced him. **Archer**, 722 A.2d at 208. This Court denied relief, holding that the trial court properly considered the death of the victim:

> The shooting was part of a continuous course of conduct in furtherance of the criminal conspiracy.
>
> As such, [Archer] is chargeable for the acts of his co-conspirators. Even though [Archer] was acquitted of murder, **the injuries resulting** from the shooting **are attributable to** [Archer] as well as **all other co-conspirators** regardless of who fired the gun. [Archer] should not benefit from an inconsistent verdict. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon [the] acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity.
>
> We find that the court was correct in finding a gravity score of 11, for regardless of the injuries sustained from the assault, the death resulting from the gunshot should have been considered as well.

- 11 -

*Id.* at 212 (citations omitted); *see also Commonwealth v. Mathis*, 464 A.2d 362, 368 (Pa. Super. 1983) ("It is a tenet of the criminal justice system that one co-conspirator is responsible for the acts of any of his or her co-conspirators performed in the course of the conspiracy [and] that restitution may be imposed upon a conspirator for the acts of his fellow conspirators done within the course of the conspiracy."). As such, the offense gravity score is calculated based upon the total amount of goods stolen by both co-conspirators.[5]

Here, the Commonwealth introduced evidence from Walmart's asset protection manager, Andrew Peters, who testified that two days after the theft, he ran an inventory check and determined that unaccounted video

---

[5] For this reason, we summarily reject Appellant's suggestion that his co-defendant was more culpable. Moreover, although Appellant alleges that his co-defendant was sentenced disproportionately with an OGS of 3, his co-defendant was sentenced separately. Appellant did not present evidence of his co-defendant's sentence into the certified record of this matter. In fact, upon review of the sentencing hearing, Appellant never argued that his co-defendant received an OGS of 3. We may not consider evidence *de hors* the record. ***See Commonwealth v. Nasir***, 308 A.3d 812, 819 n.4 (Pa. Super. 2023), *citing **Everett Cash Mut. Ins. Co. v. T.H.E. Ins. Co.***, 804 A.2d 31, 34 (Pa. Super. 2002) ("Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent." (cleaned up)); Pa.R.A.P. 1921, Note ("An appellate court may consider only the facts which have been duly certified in the record on appeal."). Moreover, the Commonwealth suggests that "the codefendant, Jason Bender, was immediately cooperative with police and gave the names of codefendants, such cooperation would likely lead to a more lenient sentence than what [Appellant] received regardless of the fact that [Appellant] pled guilty [as] evidence of Bender's cooperation was given [] in the form of a written statement Bender gave to police implicating himself and all involved." Commonwealth's Brief, at 10. Without evidence of record, however, we need not speculate.

games retailed for $3,777.36. N.T., 11/4/2011, at 7. Peters determined the number of games that were missing and assigned value to each game. *Id.* Additionally, the sentencing court viewed the video surveillance footage of the theft. *Id.* at 9-10. Appellant testified that he believed that he and his co-defendant only stole a total of 20 to 25 video games between the two of them. *Id.* at 12. The Commonwealth, however, produced evidence that the total amount of merchandise stolen was over the $2,000.00 threshold established pursuant to 204 Pa.Code § 303.15. Appellant asks us to usurp the credibility determination of the trial court as to the number of videos stolen. Ultimately, the trial court credited the Commonwealth's evidence and we may not substitute our judgment for the sentencing court. As such, we discern no abuse of discretion in determining an OGS of 5 in this matter.

Next, Appellant argues that the trial court failed to consider mitigation evidence, *i.e.*, his narcotics addiction, his minor role in the non-violent offense, and his acceptance of responsibility when fashioning his sentence. *See* Appellant's Brief at 21. He further argues that the trial court "imposed consecutive sentences without meaningful justification." *Id.* at 22 (superfluous capitalization omitted). Taken together, Appellant claims that an aggregate sentence of 28 months to 14 years of incarceration "is manifestly excessive, wholly unnecessary, and a clear abuse of discretion" and that "[a]lthough Appellant [] needed to be held responsible for his low-level involvement in the offense, there is nothing in the facts presented to require

such a substantial period of incarceration." *Id.* at 23. We will examine these contentions together.

In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Where the sentencing court has the benefit of a pre-sentence investigation report ("PSI"), we presume the court was aware of all appropriate sentencing factors and considerations and considered the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa. Super. 2017). In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009); *see also Laughman*, 314 A.3d at 572 (internal citation omitted) ("The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.").

This Court has stated:

Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement.

Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences

already imposed. [An a]ppellant is not entitled to a "volume discount" on his multiple convictions by the imposition of concurrent sentences.

***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021) (internal citations and most quotations omitted).

This Court has previously determined:

Long standing precedent recognizes that the Sentencing Code affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. When imposing a series of consecutive sentences, a sentencing court need not separately explain its reasoning for each sentence, or directly address its decision to have the sentences run consecutively. This Court has frequently held that a court satisfies its obligations under the Sentencing Code when it sets forth its general reasoning and consideration of the Section 9721(b) sentencing factors before imposing several consecutive sentences.

***Commonwealth v. Reese***, 285 A.3d 963, at *4 (Pa. Super. 2022) (non-precedential memorandum).[6]

Here, the trial court had the benefit of a PSI when sentencing Appellant. ***See*** N.T., 11/4/2011, at 18 and 21. As such, we presume the court was aware of all appropriate sentencing factors and considerations, including mitigation evidence. Furthermore, the trial court stated that it considered the record, the PSI report, and Appellant's criminal history and ultimately determined that Appellant was "a career criminal" and that "short-term sentences don't do any good." ***Id.*** at 22. The trial court set forth its general

_____

[6] We may cite non-precedential decisions filed after May 1, 2019 for persuasive value. ***See*** Pa.R.A.P. 126(b).

- 15 -

reasoning and consideration of the sentencing factors on the record, and determined that Appellant was not entitled to a volume discount, before it imposed consecutive sentences. We discern no abuse of discretion. Based upon all of the foregoing, we find that the trial court properly considered the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the Appellant and stated its reasons on the record for the sentence imposed. Accordingly, there is no merit to Appellant's sole issue presented.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/15/2026